[No. 15621.   Department One.—January 2, 1895.]

BANK OF MARTINEZ, RESPONDENT, *v.* HEMME ORCHARD AND LAND COMPANY ET AL., APPELLANTS.

BANKS—LOAN ON REAL ESTATE SECURITY.—A commercial bank, incorporated under the provisions of the Civil Code, may loan its funds, and secure its loans by mortgages on real estate.

ID.—CONSTITUTIONAL LAW.—The provisions of sections 34 and 35 of the constitution of 1849 do not prohibit the formation of banking corporations for the purposes of deposit and loan, and which do not issue paper to circulate as money.

APPEAL from an order of the Superior Court of Contra Costa County refusing a new trial.

The facts are stated in the opinion of the court.

*Earll H. Webb,* for Appellants.

*W. S. Tinning,* for Respondent.

The COURT.—This appeal was taken by the Hemme Orchard and Land Company, from an order refusing a new trial.

The plaintiff is a corporation incorporated under the laws of this state in 1873. The articles of incorporation specify that the corporators desire to incorporate under the laws of the state of California, in relation to the formation of corporations, "embraced in title (1) one,

part four (IV) of division first of the Civil Code of this
state," and further, "that the purposes for which said
corporation is formed are to engage in and carry on the
business of banking to such extent, and in such branches,
as may legally be done under the constitution and laws
of the state of California."

The action was brought to foreclose a mortgage given
by defendants August and Minerva E. Hemme to plain-
tiff, to secure a loan made to them by plaintiff.

Appellant contends that the mortgage is invalid be-
cause *ultra vires;* and illegal because forbidden by sec-
tions 34 and 35 of article IV of the constitution of
1849, which was in force when plaintiff was incorpo-
rated.

1. So far as the first point depends upon the provi-
sions of the Civil Code we are unable to see any force
in it.  The code authorizes banks of deposit and dis-
count, and prohibits the issuance of paper to circulate
as money.  Banks of deposit had from time immemorial
been almost universally banks of loan and discount.
Discount is a mode of loaning.  No reason is suggested
why they might not as well loan upon land security as
any other.  We are unable to see any point in the sug-
gestion that because savings banks may loan on real
estate therefore commercial banks may not.  It might
as well be argued that such banks cannot loan on per-
sonal security because savings banks are authorized to
do so.  The power to loan on real estate is not what
distinguishes a savings bank from a commercial bank.
In some states such loans are prohibited to commercial
banks, either expressly or by the language of the char-
ters.  Cases arising under such laws have no force here.

2. The second point is no longer open.  In *Bank of
Sonoma County* v. *Fairbanks*, 52 Cal. 196, it is said:
" Under article IV, section 34, of the constitution of the
state, deposit and loan associations may be formed which
do not issue paper to circulate as money; and such are
not *banks* within the prohibition of the constitution,
although they may be called ' banks.'"

We cannot follow the appellant in his attempted discrimination between that case and the one at hand. We perceive no essential difference.

That decision was made while the constitution of 1849 was in force, and rights have grown up under it. Even if it did not meet our approval we should not now feel at liberty to disturb that conclusion.

But we think that conclusion correct. The provisions of the constitution of 1849 must be viewed in the light of 1849. The framers of that instrument had a vivid realization of the evils of bank bills issued by private corporations to circulate as money. Practically, they had never known any other money than bank bills till they came to California. The inconvenience arising from such currency was always very great, but the framers of the constitution of 1849 had known the utter prostration of business which resulted from the panic of 1837 when every bank in the United States suspended. As their bills constituted the entire currency of the country the calamity can be better appreciated than described.

The people of California were elated by the possession of rich gold placers, and probably believed that no other currency than gold and silver would be required.

The reiteration of the idea shows that they desired above all things to prohibit the circulation of bank bills. This is what they meant by "banking," for while prohibiting it they authorized the formation of associations for the deposit of gold and silver, which, however, shall not put in circulation paper "of any bank" to circulate as money. Section 35 is but the counterpart of section 34, and requires the legislature to prohibit to any person or persons, as well as to corporations, the privileges of banking, which by the preceding section were denied to corporations. The two sections must be taken together, and it cannot be supposed that the convention intended to nullify the express exceptions made in the same provision.

Besides, if the phrase "privileges of banking" in-

cludes all functions of banking, it would prohibit any person in the state from drawing a bill of exchange, giving a promissory note, or even collecting a debt, for those and many other transactions, essential to civilization as society is now constituted, are and have for centuries been the usual functions of banks. This is the *reductio ad absurdum* which shows the conclusion false.

The legislature of 1849–50 passed a law prohibiting any corporation from performing even these acts. (Act of April 22, 1850, sec. 3, concerning corporations.) But private persons were not prohibited from doing such business. On the contrary, an act was passed at the same session regulating demand, protest, etc., of bills of exchange and other paper.

But the matter need not be pursued further, for it is absurd to attribute to any civilized modern community any such intent.

The order appealed from is affirmed.