MacLaren, Plaintiff in error, vs. The State, Defendant in error.

*January 15—February 1, 1910.*

*Banks and banking: Definition: "Deposit purchase department" in store: Regulation: Powers of legislature.*

1. A person or corporation engaged in the business carried on by banks of deposit or of discount or of circulation is doing a banking business, although but one of these functions be exercised.

2. The proprietor of a store which, in a "deposit purchase department," receives deposits of money, issues passbooks evidencing such deposits, pays interest thereon, and gives to the depositor an option to withdraw the deposit on demand, with interest,

either in money or in goods, is doing a banking business within sec. 2024—78l, Stats. (Laws of 1909, ch. 285).

3. Independent of authority specifically granted in the constitution, the legislature may regulate banking, and might regulate the business of receiving deposits of money as above stated, even though that were held not to be banking.

4. It was competent for the legislature to define as banking the business of receiving deposits as above stated, even if it were not so in fact, and to throw around such business the general safeguards provided for the banking business proper.

5. A general law enacted for the purpose of regulating a business which the legislature has power to regulate is not invalid merely because some persons upon whom it operates may be compelled to reconstruct their methods or cease to do such business.

6. It is not herein decided that the proprietor of a store may not receive money on deposit from its patrons, to enable the depositors to purchase goods from the store, where the money is used for that purpose.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Affirmed.*

Gimbel Brothers, a foreign corporation, is engaged in the business of running a large general store, commonly called a department store, in the city of Milwaukee, and the plaintiff in error is the general manager of its business at that place. The corporation maintains what is termed a "deposit purchase department." Persons desiring to deposit money with the corporation may do so to the amount of $500. Interest at the rate of four per cent. per annum is allowed on all deposits left three months, and interest is credited on balances on January 1st, May 1st, and September 1st in each year. The depositor may purchase goods at the store against the amount of his deposit, or he may withdraw the same at any time in cash without notice. The corporation failed to comply with the provisions of secs. 2024—78l, 2024—78m, and 2024—78n, Stats. (Laws of 1909, ch. 285), and the plaintiff in error, as its manager, was arrested and convicted for violating the statutes in question. From a judgment of conviction he prosecutes a writ of error in this court.

For the plaintiff in error there was a brief by *Glicksman,*

*Gold & Corrigan,* attorneys, and *F. C. Winkler,* of counsel, and oral argument by *Mr. Nathan Glicksman* and *Mr. Winkler.*

, For the defendant in error there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.*

BARNES, J. Most of the questions raised by the plaintiff in error, hereinafter called the defendant, are passed upon adversely to his contention in *Weed v. Bergh, ante,* p. 569, 124 N. W. 664. In addition to the points there raised and decided, it is urged that Gimbel Brothers, the corporation employing the defendant, was not engaged in the banking business, and that the legislature could not declare that the mere receipt of deposits constituted such business. The right of the legislature to reasonably regulate the business of the corporation, in so far as it extended to receiving moneys on deposit, is conceded, but it is urged that secs. 2024—78*l*, 2024—78*m,* and 2024—78*n,* Stats. (Laws of 1909, ch. 285), do not constitute valid regulation, but in fact amount to prohibition.

By sec. 2024—78*l* the soliciting, receiving, or accepting of money on deposit as a regular business by a person or corporation is declared to be a banking business, whether such deposit is made subject to check or is evidenced by a certificate of deposit, a passbook, a note, a receipt, or other writing. Gimbel Brothers opened a "deposit purchase department," received moneys up to $500 from any one desiring to deposit with it, issued passbooks evidencing such deposits, paid interest on the amounts deposited, and paid the principal sum deposited, with interest thereon, on demand, in money or goods, at the election of the depositor. The facts established satisfy every call of the statute, and the corporation was doing a banking business if the acts done in themselves constituted the carrying on of a banking business or if the legislature had the right to say that such acts constituted a banking business.

Banking, in its most enlarged sense, includes the business of receiving deposits, paying checks, loaning money, dealing in bills of exchange, etc., besides that of issuing paper money. Boone, Banking, § 3, and cases cited.

If a bank must transact the various kinds of business enumerated in the above definition in order to be a bank at all, it is apparent that we have no such institutions as state banks in Wisconsin, because such banks are not permitted to issue paper money. But the word is popularly and correctly used in a much more restricted sense. In modern times we have a variety of institutions that do a banking business in the popular sense, although the functions performed by them may be widely variant, and none of them may be doing all of the kinds of business included in the above definition. The business conducted by national banks differs from that done by state banks, in that the latter are not banks of issue, while the savings banks do not usually perform all of the kinds of business transacted by other banks. Trust companies that receive deposits and make loans perform two of the most important functions that are performed by banks generally, and for obvious reasons they are subject to regulation to the same extent that banks are. Morse in his work on Banking (vol. 1, § 2, 4th ed.) says that in order to have a bank "it is essential that there should be a place where, *as a regular business,* the money of others is received on general deposit. There must be a combination of moneys, a joint fund, as a primary condition of the existence of a bank or banker, or the transaction of banking business."

A bank is defined by Webster as "an establishment for the custody, loan, exchange, or issue, of money, and for facilitating the transmission of funds by drafts or bills of exchange; an institution incorporated for performing *one or more* of such functions." The same authority defines a bank of deposit as one "which receives money for safe-keeping."

In *Oulton v. Savings Inst.* 17 Wall. 109, 118, the court said:

"Banks in the commercial sense are of three kinds, to wit: (1) Of deposit; (2) of discount; (3) of circulation. Strictly speaking, the term 'bank' implies a place for the deposit of money, as that is the most obvious purpose of such an institution. Originally the business of banking consisted only in receiving deposits, such as bullion, plate, and the like, for safe-keeping until the depositor should see fit to draw it out for use, but the business, in the progress of events, was extended, and bankers assumed to discount bills and notes and to loan money upon mortgage, pawn, or other security, and at a still later period to issue notes of their own intended as a circulating currency and a medium of exchange instead of gold and silver. Modern bankers frequently exercise any two or even all three of those functions, but it is still true that an institution prohibited from exercising any more than one of those functions is a bank in the strictest commercial sense."

"Banks are said to be of three kinds, viz., of *deposit,* of *discount,* and of *circulation.* They generally exercise all of these functions." 1 Bouv. Dict. 217.

The following additional authorities hold, correctly we think, that any person or corporation engaged in the business carried on by banks of deposit or of discount or of circulation is doing a banking business, although but one of those functions may be exercised: *Curtis v. Leavitt,* 15 N. Y. 9, 56; *Reed v. People,* 125 Ill. 592, 596, 18 N. E. 295; *People v. Bartow,* 6 Cow. 290; *Hamilton Nat. Bank v. Am. L. & T. Co.* 66 Neb. 67, 92 N. W. 189.

The term "banking" is generally used in its enlarged sense, but it may also be used in a more narrow and restricted sense. There is no doubt as to the sense in which the legislature intended to use the term here, because it says that the receiving of deposits as a regular business shall constitute banking. Independent of any constitutional authority, there is no doubt about the right of the legislature to regulate banking, and neither is there any doubt about its right to regulate the busi-

ness carried on by Gimbel Brothers in the way of receiving deposits, if it should be held not to be banking.

The main purpose of regulating the banking business as the business is now carried on is to insure the safety of deposits. The calamities that befall individuals and communities as a result of bank failures are well known. The necessity for the regulation of establishments carrying on the kind of business that Gimbel Brothers carries on is just as apparent as it is in the case of regular banking institutions. It receives deposits to the amount of $500 from all persons desiring to leave money with it. The depositors may, if they wish, purchase goods with the money so deposited, but they are not required to do so. It matters not that a depositor has never purchased a dollar's worth of goods from the corporation or that he never intends to. So long as he elects to allow his deposit to remain, he is allowed interest thereon at the rate of four per cent. per annum compounded every four months, and he may withdraw his money at any time he wishes on demand and without previous notice of intention to withdraw it. When the high financial standing of the corporation is considered, the inducement offered to depositors is not only attractive, but alluring. We think it would not be going beyond the domain of common knowledge to say that no bank or trust company doing business in the city of Milwaukee offers so inviting a contract to the small investor in the matter of interest rates and the privilege of converting the indebtedness to the depositor into cash. It was stipulated as a fact that the "deposit purchase department" of Gimbel Brothers had been in operation upwards of a year prior to the date upon which the alleged offense was committed, and that on said date there was deposited with said corporation $115,738.10 by 5,915 different depositors. That the amount was not larger was probably due to the fact that a limit was placed upon the amount that might be deposited by a single person, and the further fact that the business of receiving deposits had not been in vogue

a sufficient length of time so that the community generally was advised of the fact that deposits would be received and of the favorable terms under which they were being received. The payment of the highest rate of return to depositors that a safe investment of the funds intrusted to the care of the recipient will admit of is highly commendable, and for obvious reasons should be encouraged, and there is no suggestion or suspicion of the inability of Gimbel Brothers to meet its obligations to its depositors. But most bankers would be honest if there were no laws regulating the banking business, and the great majority of them would carry on their business on safe and conservative lines. For such there is no necessity for regulation. It is for the dishonest, the careless, or the incompetent banker that regulative laws become essential, and, inasmuch as it is necessary at all to resort to regulation, it must apply to all engaged in the transaction of the same kind of business under substantially similar conditions.

Conceding the entire solvency and ability of Gimbel Brothers to meet its obligations, really proves nothing. Other large or small business establishments that are doing an unprofitable business and are perilously near the verge of insolvency may reach out for deposits with the hope and expectation of arresting the inevitable, anticipating brighter things from the future. There are few honest failures where the insolvent does not believe that with a little more leniency on the part of his creditors and a little greater extension of his credit he will be able to meet his obligations in full. Such a business establishment might well increase the rates of interest to five or six per cent., and place no limit at all on the amount that would be received, or place one much higher than that fixed in the present case. It is not difficult to surmise that, if the practice pursued by Gimbel Brothers became general with mercantile houses in a city like Milwaukee, their deposits would in no long time equal or exceed the time deposits of the banks and trust companies.

, Regulation must be carried on through the medium of general laws which often bear more heavily on some than on others owing to the circumstances which surround them.    If the general purpose of the law is regulation, and not the suppression of lawful business, the fact that some persons on whom it operates may have to reconstruct their methods of doing business, or cease doing business at all, does not render the law void.    This court recently approved a rule, abundantly supported by authority, to the effect that the legislature in enacting a police regulation may include within the purview of the statute acts innocent in themselves and not a subject of police regulation, where the inclusion of the acts is necessary in the opinion of the legislature in order to make the regulation effective.    *Pennell v. State, ante,* p. 35, 123 N. W. 115, and cases cited.

Aside from what has been said, it being conceded that the legislature might regulate such business as Gimbel Brothers was carrying on in the way of receiving deposits (admittedly one of the principal functions of a bank), it was competent for the legislature, considering the nature of the business, to define it as banking, if it were not such in fact, and to throw around it the general safeguards provided for the banking business proper.    However, we do not wish to be understood as holding that Gimbel Brothers might not receive money on deposit from its patrons, where such money is deposited for the purpose of enabling the depositor to purchase goods from its store and where the money is used for that purpose.    The judgment of the circuit court is correct and should be affirmed.

*By the Court.*—Judgment affirmed.

Dodge, J., dissents.