[L. A. No. 7351. In Bank.—December 11, 1923.]

In the Matter of the Estate of MYRA JOSEPHINE WELLINGS, Deceased. THE MICHIGAN TRUST· COMPANY (a Corporation), Appellant, v. MARION FRANCES BRONSON et al., etc., Respondents.

[1] ESTATES OF DECEASED PERSONS — APPOINTMENT OF EXECUTOR — RIGHT TO ACT.—An executor appointed by will has the right to act unless there is some express provision of law disqualifying him.

[2] ID.—TRUSTEE UNDER WILL—RIGHT TO ACT.—A trustee under a will has even a more substantial right to be recognized by the court than has an executor. A trustee does not become such by virtue alone of the decree of distribution, although his fuller and more complete powers and duties are thus devolved upon him.

[3] ID.—TESTAMENTARY TRUSTEE—STATUS OF.—A testamentary trustee is a devisee under the will, and takes as trustee under the will at the death of the testator; he does not derive title from the decree of distribution, which merely declares the title that accrued under and by the will, but from the will itself.

[4] ID.—CONTROL OF ·TRUST PROPERTY.—When an estate is devised to trustees it becomes their duty, having accepted the trust, to obtain control of the trust property.

[5] ID.—INTENTION OF TESTATOR—CONSTRUCTION.—When the desire of a testator can be fully carried out only through trustees, their appointment as such implies a wish on the part of the testator that it be so done.

[6] FOREIGN CORPORATIONS—DOING BUSINESS IN STATE—WHAT CONSTITUTES—CONSTITUTIONAL LAW.—When a foreign corporation enters a state other than that of its creation, for the purpose of doing some substantial part of its ordinary business, or of exercising some of the functions for which it was created, it is transacting business within that state. When such foreign corporation does directly the primary business for which it was organized, it is "doing business" within the meaning of the statute.

[7] ID. — FOREIGN TRUST COMPANY — TRUSTEE UNDER WILL — DOING BUSINESS IN THIS STATE—CONSTITUTIONAL LAW.—When a foreign trust corporation enters this state, under powers given to it by will to bargain, sell, transfer, and convey, and in any manner dispose of the estate, real or personal, at such times, in such manner, on such terms, and for such purposes as to it may seem proper, and for the best interests of the estate, receives by devise and asserts ownership of land devised to it, and assumes to carry out the terms of the trust, such foreign company is doing business in this state within the meaning of section 15 of article XII of

the constitution, which provides that no foreign corporation shall be allowed to transact business in this state under mere favorable conditions than are prescribed by law for similar corporations organized under the laws of the state.

[8] BANK ACT — FOREIGN CORPORATIONS — CONSTITUTIONAL LAW.—The provisions of the Bank Act, as amended (Stats. 1917, pp. 598–600), regulating the practice under which both domestic and foreign trust companies are permitted to do business, do not contravene that portion of the constitution (art. XII, sec. 15) which provides that no foreign corporation shall be allowed to transact business in this state under more favorable conditions than are prescribed by law for similar corporations organized under the laws of the state.

[9] BANKS AND BANKING—CONSTITUTIONAL LAW—POWER OF LEGISLATURE.—The right of the legislature to exercise its judgment as to the necessity for creating banks includes the power to determine the scope and character of the functions which shall be given to them. This discretion vested in the legislature should not be disregarded or set aside through the exercise of judicial discretion for the purpose of determining whether it was relevant or appropriate to give the banks the particular functions in question.

[10] ID.—REGULATION OF BANKING BY STATE.—The business of banking is a proper and legitimate subject of regulation by the state.

[11] ID.—BUSINESS OF TRUST COMPANIES—CHARACTER OF—POWER OF LEGISLATURE.—It was competent for the legislature, considering the business which trust companies are doing in this state, to define such business as banking, if it were not such in fact, and to throw around it the general safeguards provided for the banking business proper.

[12] CONSTITUTIONAL LAW — TITLE OF ACT — CONSTRUCTION.—Section 24 of article IV, which provides that "every legislative act shall embrace but one subject, which subject shall be expressed in its title," must be liberally construed, and all that is required to be contained in the title in order to meet the constitutional requirement is a reasonably intelligent reference to the subject to which the legislation is to be addressed.

[13] BANKS AND BANKING—BANK ACT—TITLE OF—APPOINTMENT OF FOREIGN TRUST COMPANIES AS TRUSTEES.—The provisions of the Bank Act relating to trust companies, and to the appointment of such trust companies as executors and trustees, are logically germane to the title of the act, which is "An Act to Define and Regulate the Business of Banking," and are included within its scope.

[14] ID.—STATUTORY CONSTRUCTION.—The general purpose of a statute being declared, the details provided for its accomplishment will be regarded as necessary incidents.

[15] ID.—CONSTRUCTION OF BANK ACT.—The procedure outlined by the legislature for the appointment and qualification of, foreign

trust companies acting as executors and trustees and providing the method by which they shall carry on the administration of the trusts committed to them are part of the comprehensive scheme contemplated, and afford an appropriate means of effecting one of the main purposes of the law.

[16] ESTATES OF DECEASED PERSONS—RIGHT OF FOREIGN TRUST COMPANY TO ACT AS TRUSTEE.—A foreign trust company, having complied with the laws of this jurisdiction governing the right of foreign corporation to do business in this state, and being a devisee under the will of the deceased, was entitled to have distribution of the estate made to it as trustee pursuant to the terms of the will.

[17] ID.—REFUSAL TO APPOINT FOREIGN TRUST COMPANY TRUSTEE—UNSUPPORTED FINDING—PRESUMPTION.—A finding made by a probate court that it would be detrimental, unnecessary, and not to the best interests of the estate to appoint as trustee a foreign trust company named in the will as such is unwarranted, where there is nothing in the agreed statement of facts between the parties to justify the court in saying in advance of any act of such trust company in connection with the administration of the estate that it would be detrimental or not to the best interests of the estate if it were appointed trustee; and in the absence of any showing to the contrary, it will be presumed that the trustee will so invest the funds of the estate distributed to it as to bring in the greatest amount of revenue.

APPEAL from a decree of distribution of the Superior Court of Los Angeles County. James C. Rives, Judge. Reversed.

The facts are stated in the opinion of the court.

Flint & MacKay, William A. Bowen, Flint, MacKay & Bowen, U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, James M. Oliver, Phelps & Winston, Gibson, Dunn & Crutcher and Norman S. Sterry for Appellant.

Leland J. Allen and G. A. Gibbs for Respondents.

Louis P. Boardman, *Amicus Curiae.*

WASTE, J.—The sole question presented on this appeal is the right of the Michigan Trust Company, a foreign corporation, to act as trustee, and, as such, to have distributed to it the residue of the estate of Myra Josephine Wellings,

deceased. The material facts are brought here in an agreed statement. The decedent died on September 6, 1920, in the county of Los Angeles. At the time of her death she was a resident of that county, and left, surviving, her granddaughters, nieces, and nephews residing in California and elsewhere. She left a last will and testament, executed in the state of Michigan on the twentieth day of November, 1916, at which time the testatrix was a resident of that state, and by the terms of which she left her entire estate to her husband, James Henry Wellings, provided he survived her. If he should not survive her, she gave, devised, and bequeathed the rest, residue, and remainder of her estate, after certain provisions were carried out, in trust to the Michigan Trust Company, this appellant, a corporation organized and existing under and by virtue of the laws of the state of Michigan.

The decedent appointed her husband, or, in the event of his death, the Michigan Trust Company, her executor, and appointed appellant trustee under the will, with certain enumerated powers. The husband of the decedent predeceased her, but when the will was filed for probate the appellant, not having the paid-up capital required by the laws of California to permit it to act, did not seek to be appointed executor. The will was admitted to probate, and letters of administration with the will annexed were granted to George C. Bronson. All of the property of the decedent, valued at $80,784.18, was located in California, and, according to the inventory, consisted of moneys on deposit, stocks, bonds, promissory notes secured by mortgage, household and personal effects, and certain real estate situated in Los Angeles County. Due administration was had, and when the time was ripe for closing the estate the administrator with the will annexed rendered his final account and report, together with his petition for distribution of the residue of the estate to the granddaughters, nieces, and nephews of the decedent. Appellant, having in the meantime increased its capital stock to an amount in excess of the capitalization required in order to entitle it to act as trustee in this state, filed its objection to the petition, and sought to have distribution made to it as trustee under the will. The matter was heard by the probate court on an agreed statement of facts. By stipulation, all objections of the

parties were waived, with the single exception of the question of the right of appellant to act as trustee under the will of Myra Josephine Wellings, deceased. The court found that appellant is "not qualified to act as trustee in said estate," and that it would be "detrimental, unnecessary, and not to the best interests of the estate to appoint" appellant such trustee, or to distribute any part of the estate to it. Its petition being denied, appellant has perfected this appeal.

The appeal was first presented on briefs without argument. In a brief, filed by *amicus curiae*, the constitutionality of the Bank Act of California was challenged. Because of the importance of the questions involved, the submission was set aside and the case was again placed on the calendar for oral argument as to certain points. On the suggestion of the court, the attorney-general and the attorney for the state superintendent of banks were permitted to join with appellant in the further presentation of the appeal.

[1] An executor appointed by will has the right to act unless there is some express provision of law disqualifying him. (*Bauquier's Estate*, 88 Cal. 302, 309 [26 Pac. 178].) [2] A trustee under a will has even a more substantial right to be recognized by the court. He does not become a trustee by virtue alone of the decree of distribution, although his fuller and more complete powers and duties are thus devolved upon him. [3] A testamentary trustee is a devisee under the will, and takes as trustee under the will at the death of the testator. (Civ. Code, sec. 1341; *Estate of O'Connor*, 2 Cal. App. 470, 475 [84 Pac. 317]; *Title Ins. & Trust Co.* v. *Duffill*, 191 Cal. 629 [218 Pac. 14].) He does not derive title from the decree of distribution, which merely declares the title that accrued under and by the will, but from the will itself. (*Western Pac. Ry. Co.* v. *Godfrey*, 166 Cal. 346, 349 [Ann. Cas. 1915B, 825, 136 Pac. 284].) [4] When an estate is devised to trustees it becomes their duty, having accepted the trust, to obtain control of the trust property. (3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1067.) [5] When the desire of a testator can be fully carried out only through trustees, their appointment as such implies a wish on the part of the testator that it be so done. (*Estate of O'Connor, supra.*) Therefore, unless some express statutory prohibition be found which will prevent the

appellant from acting as trustee in this state under the will
of Myra Josephine Wellings, the order of the probate court
refusing distribution to it must be reversed.

Appellant claims the right to act as trustee under the will
of Mrs. Wellings by virtue of authority conferred by sec-
tion 7 of the act to define and regulate the business of bank-
ing, designated as the "Bank Act," as amended (Stats.
1917, pp. 598–600), which provides, in part, "that a trust
company incorporated in another state may have or exercise
in this state such powers as are permitted to foreign corpo-
rations by the provisions of section ninety of this act *and
may be appointed and may accept appointment and may act
in this state as executor of or trustee under the last will and
testament of any deceased person,* upon giving the bond re-
quired in such cases of individuals unless waived by the last
will and testament making such appointment and by taking
and subscribing an oath for faithful performance of such
trust by the president, vice-president, secretary, manager,
or trust officer of said corporation; provided, that such
superintendent of banks, for the time being, shall be attor-
ney of such foreign corporation qualifying or acting in
this state as such executor or trustee, upon whom process
against such foreign corporation may be served in any action
or legal proceeding against such executor or trustee affecting
or relating to the estate or property represented or held
by such executor or trustee, or any act or default of such
foreign corporation in reference to such estate or property,
and it shall be the duty of any such foreign corporation so
qualifying or acting to file in the office of said superinten-
dent of banks a copy of its articles of incorporation, or of
the statute chartering such corporation, certified by its sec-
retary under its corporate seal, together with the postoffice
address of its home office, and a duly executed appointment
of said superintendent of banks as its attorney to accept
service of process as above provided, and said superinten-
dent of banks, when any such process is served upon him,
shall at once mail the papers so served to the home office
of such corporation." [Italics ours.]

Respondents challenge the constitutionality of the Bank
Act, in so far as it applies to the right of foreign corpora-
tions to act as trustees in California, upon several grounds.
Their first contention is that if section 7 of the act tends to

permit foreign trust companies to do business in this state, it contravenes that portion of the state constitution (art. XII, sec. 15), which provides that no foreign corporation shall be allowed to transact business in this state under more favorable conditions than are prescribed by law for similar corporations organized under the laws of the state. The first question for consideration is whether appellant, in merely acting as trustee under the will of Mrs. Wellings, will be doing business within this state. The Michigan Trust Company is a corporation organized under the laws of the state of Michigan, and authorized to transact a trust business, and having capacity to act as executor and trustee. It filed a certified copy of its articles of incorporation in the office of the Secretary of State of California on the twenty-first day of September, 1901, and a like copy in the office of the superintendent of banks on December 12, 1918. A certified copy of the certificate of increase of its capital stock from $200,000 to $1,000,000 was filed in the office of the Secretary of State on February 7, 1921. On January 18, 1921, it made and appointed the superintendent of banks of the state of California, and his successor and successors in office, its attorney, as executor and trustee under the last will and testament of Myra Josephine Wellings, deceased, upon whom process against it may be served in any action or legal proceeding against it as such executor or trustee affecting or relating to the estate or property represented or held by it as such executor or trustee, or any act or default of the corporation in reference to such estate or property. Appellant offered to provide a bond in such amount as the court might require, as a condition for the distribution of the estate to it as such trustee.

Appellant argues that acting as trustee in this one instance would be but a single and isolated act of a foreign trust company in receiving property in this state as a trustee under a will and testament, and would not amount to conducting or doing business within the state. The phrase "to transact business," as used in the constitution, is equivalent to the words "to do business" found in the statutes of many states prohibiting foreign corporations from "doing business" in such states until they have complied with certain prescribed local requirements. In most jurisdictions it has been held to have reference to the con-

tinuance by the corporation, in some form of business, and not to apply to a single act of business done in the state. [6] But when a foreign corporation enters a state other than that of its creation, for the purpose of doing some substantial part of its ordinary business, or of exercising some of the functions for which it was created, it is transacting business within that state. When such foreign corporation does directly the primary business for which it was organized, it is "doing business" within the meaning of the statute. (*Conference Free Baptists* v. *Berkey*, 156 Cal. 466, 470 [105 Pac. 411]; *Bullfrog Goldfield R. R. Co.* v. *Jordan*, 174 Cal. 342, 344 [163 Pac. 40]; 14A Corpus Juris, p. 1270, sec. 3977; 7 Cal. Jur., p. 222, secs. 704–706.) The Michigan Trust Company was created and organized to conduct and carry on a trust business. One of the main purposes for which it was formed is to act as executor and trustee under appointment made in last wills and testaments. This function is one of the ends for which the corporation was organized. Its exercise is not merely a means to enable it to accomplish those ends. Neither is it incidental to carrying on the main purposes of the corporation, nor only the exercise of some corporate power, as has been the case in many of the decisions which hold that one single and isolated transaction will not constitute doing business within the meaning of the statute. By the terms of the will of Mrs. Wellings devising her property to Michigan Trust Company, and appointing it trustee of her estate, appellant is given full power and authority to bargain, sell, transfer, and convey, and in any manner dispose of the estate, real or personal, at such times, in such manner, on such terms, and for such purposes as to it may seem proper, and for the best interests of the decedent's estate. It has full power to invest and reinvest any moneys that may come to it as such trustee. [7] When a foreign trust corporation enters a state, under such powers, receives by devise and asserts ownership of land devised to it, and assumes to carry out the terms of the trust, such foreign company is doing business in the state within the meaning of the statute. (*Pennsylvania L. Ins. Co.* v. *Bauerle*, 143 Ill. 459 [33 N. E. 166, 170]; 14A Corpus Juris, p. 1292, sec. 3999.)

[8] It must therefore be determined whether or not, under the provisions of the Bank Act, a foreign trust cor-

192 Cal.—33

poration, permitted to act as trustee under the will of a decedent in this state, will be transacting business in California under more favorable conditions than those prescribed by law for trust corporations organized under the laws of this state. Section 7 of the Bank Act provides that no foreign corporation having authority to act as executor of or trustee under the last will and testament of any deceased person shall establish or maintain, directly or indirectly, any branch office or agency in this state, nor shall it in any way solicit, directly or indirectly, any business as executor or trustee. For any violation of this enactment the court having jurisdiction of such executor or trustee in any proceeding may, in its discretion, revoke the right of such foreign corporation to thereafter act in such capacity. Domestic trust companies which may act as executors or trustees are not so limited. They are permitted to solicit and to do a general trust business throughout the state, and to accept any and all private trusts without limitation. Unless the will of the decedent appointing a foreign trust company waives the giving of an undertaking, the trustee must give the bond in large or small amount required in such cases of individuals. Domestic trust companies may act as trustees without giving any bond or security, other than the required deposit with the state treasurer. Respondents have attempted to show, by arranging in parallel statements the respective powers and limitations of foreign and domestic trust companies permitted to do business within this state, that the restrictions placed upon foreign trust companies are less rigorous than those imposed upon trust corporations organized under the laws of California. A detailed discussion of the points of comparison insisted on by respondents is unnecessary, for, viewing the whole situation in which the two kinds of trust companies are placed before being permitted to act as trustees, the advantage seems manifestly to rest with those organized under the laws of this state. The provisions of the Bank Act regulating the practice under which both domestic and foreign trust companies are permitted to do business are, therefore, free from the constitutional inhibition urged by respondents.

When this matter was first considered on appeal it was suggested in the brief of *amicus curiae,* and it is now urged by respondents, that the provisions of the Bank Act relating

to trust companies violate article IV, section 24, of the constitution, which provides that "every legislative act shall embrace but one subject, which subject shall be expressed in its title." The title of the Bank Act is "An Act to Define and Regulate the Business of Banking." (Stats. 1909, p. 87.) It is contended that trust companies are not to be considered in any way as banks, and that the regulation of the business of trust companies is not germane to the regulation of the business of banking. The point is also made that those sections of the Bank Act which relate to and prescribe the methods of appointment of foreign corporations as executors and trustees under the wills of decedents are unconstitutional in that they are not germane to the subject of the statute expressed in its title. Stated in another way, the contention is that the provisions of sections 7 and 90, and other sections of the act which relate to the appointment, qualification, and administration of executors and trustees, refer to probate matters which have no connection with the business of banking. The Bank Act, as variously amended to and including the legislative session of 1917, will be found in Part I of Henning's General Laws, 1920, page 143. Section 1 provides that the act shall be known as the "Bank Act," and shall be applicable to all corporations specified in the next section. It is provided in section 2 that the word "bank," as used in the act, "shall be construed to mean any incorporated banking institution which shall have been incorporated to conduct the business of receiving money on deposit, or transacting a trust business as" defined in the act. The section then provides that "banks are divided into the following classes: (a) savings banks; (b) commercial banks; and (c) trust companies." The meaning of the term "savings bank" and "commercial bank" are explained in sections 4 and 5 of the act. Section 6, defining the term "trust company," provides: "The term 'trust company,' when used in this act, means any corporation which is incorporated under the laws of this state for the purpose of conducting the business of acting as executor, administrator, guardian of estates, assignee, receiver, depositary or trustee under appointment of any court or by authority of any law of this state, or as trustee for any purpose permitted by law." (Stats. 1913, p. 137.) Section 7 of the act, which relates to foreign corporations

and prescribes the conditions on which they may transact a banking business in this state, provides that a trust company incorporated in another state may have or exercise in this state such powers as are permitted to foreign corporations by the provisions of section 90 of the act, and may be appointed and act in this state as executor of or trustee under the last will and testament of any deceased person (Stats. 1917, pp. 598, 600, *supra*). Section 90 of the act provides that a foreign corporation may be authorized to act in this state as trustee for certain designated purposes, none of which is germane to this discussion, for they are powers granted in addition to the right of such foreign trust company to be appointed and act as executor or trustee in this state, which is directly conferred by section 7.

It cannot be disputed that, in the ordinary sense of the term, a "bank" is not a "trust company," nor is a "trust company" a "bank." The legislature, by merely defining a certain kind of institution as a bank, does not in fact make it a bank in the ordinary commercial meaning of that word. The purpose of the Bank Act is not to change the nature of the business done by any of the corporations which are made subject to the act, but is purely one of regulation. For the purpose of regulation, and to specify what kinds of corporations come within the purview of its provisions, the legislature has used the word "bank" to mean not only any incorporated banking institution which shall have been created to conduct the business of receiving money on deposit, but also such corporations as are permitted by the act to carry on business which has, by the trend of common understanding and opinion, come to be regarded as being appropriate and relevant to the banking business, functions which, in the judgment of the legislature, make the business of the banks more successful. The power of the legislature to do this is, we think, beyond question. It has had the right, since California became a state, to provide for the formation of banks under general laws. (Const. 1849, art. IV, sec. 34; Const. 1879, art. XII, sec. 5.) The last-named provision was amended in 1910 to extend its power in the matter of regulating the business of banking. **[9]** The right of the legislature to exercise its judgment as to the necessity for creating banks includes the power to determine the scope and character of the functions which shall

be given to them. This discretion vested in the legislature should not be disregarded or set aside through the exercise of judicial discretion for the purpose of determining whether it was relevant or appropriate to give the banks the particular functions in question. (*First Nat. Bank* v. *Union Trust Co.*, 244 U. S. 416, 424 [Ann. Cas. 1918D, 1169, L. R. A. 1918C, 283, 61 L. Ed. 1123, 37 Sup. Ct. Rep. 734, see, also, Rose's U. S. Notes].) **[10]** That the business of banking is a proper and legitimate subject of regulation by the state is well settled. (*State Sav. & Com. Bank* v. *Anderson*, 165 Cal. 437, 442 [L. R. A. 1915E, 675, 132 Pac. 755].) It was held in that case (p. 449) that the Bank Act, as originally passed in 1909, and which deals with banks and trust companies as does the present act, deals solely with a matter pertaining to the public welfare, and that the regulations provided by the act have a substantial relation to and are reasonably designed to protect and safeguard the state against insecure banking. The precise point we are now considering was not made in that case, but it was there said (p. 442): "Under the rapid changes which have occurred in recent years in the industrial and economic world, enterprises and industries which were theretofore considered mainly of a private character, have become essentially of a public nature and the changed conditions have called for regulations of a kind different from those which have theretofore sufficed. In that progress, banking, considered in early years as more or less of a private enterprise, has in the commercial development of the world become so incorporated into the business growth and prosperity of the country and so affects the commercial welfare and business interests of the people as to have become a proper and legitimate subject of legislative regulation by the state in the exercise of its police power."

The functions of a bank may be variously regarded. "Originally the business of banking consisted only in receiving deposits, such as bullion, plate, and the like, for safekeeping until the depositor should see fit to draw it out for use, but the business, in the progress of events, was extended, and bankers assumed to discount bills and notes and to loan money upon mortgages, pawn, or other security, and at a still later period to issue notes of their own intended as a circulating currency and a medium of exchange

instead of gold and silver. Modern bankers frequently exercise any two or even all three of those functions." (*Oulton* v. *Savings Institution,* 84 U. S. 109, 118 [21 L. Ed. 618, see, also, Rose's U. S. Notes].) Other functions have, with the still further progress of events, come to be regarded as so appropriate and relevant to the banking business as to be deemed almost essential attributes of it. An apt illustration is to be found in the case of the national banks. The act of Congress establishing the federal reserve board (38 U. S. Stats. 251, 262, c. 6) gives the board authority to grant national banks the right to act as trustee, executor, or administrator. The right of Congress to confer this power was called in question in a controversy between certain trust companies and a national bank. The supreme court of the United States held that although it might not be within the implied power of Congress to establish as a function of the banks a particular character of business, when such business was isolatedly considered, if such business was appropriate or relevant to the banking business the implied power was to be tested by the right to create the bank and the authority to attach to it that which was relevant in the judgment of Congress to make the business of the bank successful. (*First Nat. Bank* v. *Union Trust Co., supra,* at p. 420.) What may or may not be done by banks, and what may or may not be considered as carrying on a banking business, depends upon the changing circumstances of society. The California pioneers, by the section of the constitution of 1849, *supra,* prohibited banking associations from issuing paper "to circulate as money." Construing the effect of this prohibition at a much later date, this court said: "The provision of the constitution of 1849 must be viewed in the light of 1849." (*Bank of Martinez* v. *Hemme Orchard & Land Co.,* 105 Cal. 376, 378 [38 Pac. 963, 964].) As corollary to that statement, the provision of the present Bank Act should be construed in the light of to-day.

Corporations and associations formed for other purposes may take on the essential functions of a banking business. In such event the power of the state to regulate the business is unquestioned. For instance, trust companies that receive deposits and make loans perform two of the most important functions that are performed by banks generally.

For very obvious reasons they are subject to regulation to the same extent as banks are. In classifying trust companies as banks, for the purpose of regulation, the legislature has acted on common knowledge that trust companies frequently do a general banking business in addition to their trust business, and that many banks are doing a more or less extensive trust business. [11] We therefore entertain no doubt that it was competent for the legislature, considering the business which trust companies are doing in this state, to define such business as banking, if it were not such in fact, and to throw around it the general safeguards provided for the banking business proper. (*MacLaren* v. *State*, 141 Wis. 577, 580–584 [135 Am. St. Rep. 55, 18 Ann. Cas. 826, 124 N. W. 667].)

We are also satisfied that the Bank Act embraces but one subject, and that subject is sufficiently expressed in its title. [12] It is now well settled that the constitutional provision requiring the subject of the act to be expressed in its title must be liberally construed, and that all that is required to be contained therein in order to meet the constitutional requirement is a reasonably intelligent reference to the subject to which the legislation is to be addressed. [13] When the purpose of the Bank Act as expressed in its title is borne in mind, it must appear, from what we have already said, that the provisions of the act relating to trust companies, and to the appointment of such trust companies as executors and trustees, are logically germane to the title of the act, and are included within its scope. (*Estate of McPhee*, 154 Cal. 385, 389 [97 Pac. 878]; *Abeel* v. *Clark*, 84 Cal. 226, 229 [24 Pac. 383].) [14] The general purpose of a statute being declared, the details provided for its accomplishment will be regarded as necessary incidents. (*Ex parte Liddell*, 93 Cal. 633, 637 [29 Pac. 251].) [15] The procedure outlined by the legislature for the appointment and qualification of foreign trust companies acting as executors and trustees, and providing the method by which they shall carry on the administration of the trusts committed to them, are part of the comprehensive scheme contemplated, and afford an appropriate means of effecting one of the main purposes of the law. (*Robinson* v. *Kerrigan*, 151 Cal. 40, 50 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129]; *Buelke* v. *Levenstadt*, 190 Cal. 684 [214 Pac. 42].)

For the foregoing reasons, we see no need to question the capacity of the Michigan Trust Company, as trustee, to conduct, manage, and dispose of the property comprising the residue of the estate of Myra Josephine Wellings, deceased. The will has been probated here. It operates upon the real estate by the force of our law, and the property will be distributed to the Michigan Trust Company by the superior court of this state. Appellant will not have the status of a trustee appointed by the courts of another state merely to sell property in this state, and therefore no complication or doubt as to its powers can arise on that ground. After distribution the trust will still be subject to the jurisdiction of the courts of this state. (Code Civ. Proc., sec. 1699.) [16] Appellant, having complied with the laws of this jurisdiction governing the right of foreign corporations to do business in this state, and being a devisee under the will, it was entitled to have distribution of the estate made to it pursuant to the terms of the will of the deceased testatrix. (*Estate of Rawitzer*, 175 Cal. 585, 593 [166 Pac. 581].)

[17] The trial court went beyond the stipulation of the parties as to the sole question to be decided in the lower court, and found that it would be detrimental, unnecessary, and not to the best interests of the estate to appoint appellant trustee. In support of this finding respondents rely upon the stipulation in the agreed statement of facts to the effect that the decedent, before her death, received payment of a mortgage on Michigan property drawing six per cent interest, and invested the amount at seven per cent interest in Los Angeles County, and that the going rate of interest in California is from one to three per cent higher than in Michigan. Assuming it was proper to rely on this point on the appeal, there is nothing in the agreed statement to justify the court in saying in advance of any act of the appellant in connection with the administration of the estate that it would be detrimental or not to the best interests of the estate that it be appointed trustee. It is not even intimated that the Michigan Trust Company intends to remove any part of the estate from the state of California pending the termination of the trust, and, as already pointed out, after distribution the superior court will not lose jurisdiction of the estate but will retain such jurisdiction for the purpose of the settlement of accounts under the trust. In

the absence of any showing to the contrary, it will be presumed that the trustee will so invest the funds of the estate distributed to it as to bring in the greatest amount of revenue.

The order of the lower court is reversed.

Kerrigan, J., Lennon, J., Lawlor, J., Seawell, J., Wilbur, C. J., and Myers, J., concurred.

Rehearing denied.

All the Justices concurred.