See also D.C., 288 F.Supp. 384.

---

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO,**
Plaintiff,

v.

**Victor Manuel ZEQUEIRA and Alejandrina Lopez De Zequeira,**
Defendants.

**Civ. A. No. 238–67.**

United States District Court
D. Puerto Rico.

Oct. 10, 1969.

Stanley Segal, San Juan, P. R., for plaintiff.

Carlos Carrera Benítez, Rio Piedras, P. R., for defendants.

## ORDER

CANCIO, Chief Judge.

The history of this case, briefly summarized, is as follows: A complaint requesting the foreclosure of a certain mortgage was filed by the plaintiff in May of 1967. Defendants were served, default was entered and on July 14, 1969 judgment was rendered in favor of plaintiff. Subsequent to the judgment, but prior to the judicial sale, defendants appeared before this court represented by counsel. It was agreed that plaintiff would postpone the judicial sale. However, said sale was subsequently held as defendants did not comply with a certain payment plan agreed upon. On January 26, 1968 defendants filed a motion to have the judicial sale set aside. Hearings were held, memoranda submitted, and on September 9, 1969 this court denied defendants' Motion to Set Aside the Sale. From the Order of this court denying said motion, defendants filed a Notice of Appeal. Subsequently, they filed a Statement of Points in which specifically the lack of jurisdiction of this court in cases of this nature was relied upon as one of the points in said statement. Defendants' appeal was dismissed by the Circuit Court of Appeals for want of diligent prosecution on March 7, 1969. Subsequently, on May 5, 1969, they filed the present motion entitled "Motion to Set Aside Judgment for Lack of Jurisdiction" in which they alleged again the lack of jurisdiction of this court in cases of this nature.

We are of the opinion that defendants are precluded by the doctrine of res judicata, to collaterally attach the judgment of this court and that their motion should be denied.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a dismissal for failure to prosecute shall operate as an adjudication upon the merits. Since the jurisdiction of this court in cases of this nature was specifically raised before the Circuit Court of Appeals, that matter was adjudicated by the aforesaid dismissal. In other words, the situation is as if defendants had litigated the jurisdiction in the Court of Appeals and received an adverse ruling. Furthermore, it is elementary law that the doctrine of res judicata applies not only to matters that were actually raised before the trial court, but also as to all matters that could have been raised.

The principles of res judicata apply to questions of jurisdiction, whether it is jurisdiction over the subject matter or over the parties. Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552. It is well settled that "jurisdictional facts," once litigated, whether over the person or subject matter, are res judicata. Baldwin v. Iowa State Traveling Mens Ass'n, 283 U.S. 552, 51 S.Ct. 517, 75 L.Ed. 1244; Stoll v. Gottlieb, 305 U.S. 165 (1938). The Supreme Court of the United States extended this doctrine to unlitigated jurisdictional facts in the case of Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). In this case, defendants did not litigate the unconstitutionality of the statute, which was subsequently declared unconstitutional. However, the court held that the judgment could not be collaterally attacked. In this connection, Justice Frankfurter, in his dissenting opinion in the case of Sherrer v. Sherrer, 334 U.S. 343, 367, 68 S.Ct. 1087, 1102, 92 L.Ed. 1429, 1 A.L.R.2d 1355, states as follows:

"Res judicata forecloses relitigation if there has been an opportunity to liti-

gate once, *whether or not it has been availed of,* or carried as far as possible (cases cited) and it applies to questions of jurisdiction of subject matter as well as to that of persons." (cases cited) (emphasis supplied)

Moore's Federal Practice, Vol. 7, section 60.25(2), page 269, in discussing when a default judgment may be collaterally attacked, states as follows:

"On the other hand if the defendant appears in the original action and contests the jurisdiction of the court over either his person or the subject matter * * * and that issue is decided against him and he thereafter defaults, the default judgment is not subject to collateral attack for lack of jurisdiction of either person or subject matter. Nor is it where he appears but fails to contest jurisdiction. And, although he makes no appearance, if the court had the requisite jurisdiction over him that is needed for the type of judgment—in personam, quasi in rem or in rem—which it renders, the default judgment is valid, not void, and is not subject to collateral attack for lack of jurisdiction."

In an article in Harvard Law Review, Vol. 53, page 652, entitled "Res Judicata and Jurisdiction: The Bootstrap Doctrine," an analysis is made of the evolving concepts in this field, and the following conclusion is reached:

"Res judicata rules supreme in the jurisdictional field. A doctrine applied originally only in cases of contested non-jurisdictional issues with conceded jurisdiction has been expanded to cover not only those jurisdictional facts that have been actually litigated but also those that might have been.

The courts have felt that it was desirable to end litigation once there has been a trial of the issues, and having determined under the doctrine of the much criticized case of York vs Texas that a statute converting a special into a general appearance did not deprive a defendant of due process, *a*

*foundation was laid for a long line of authoritative cases which allow a court which has no jurisdiction to bind adversaries personally before it by a finding that it in fact has no jurisdiction."* (emphasis supplied)

It is our opinion that every court, in rendering a judgment, has the authority and does, tacitly or expressly, determine its jurisdiction over the parties and subject matters before it. Walling v. Miller, 8 Cir., 138 F.2d 629 (1943).

■ In any case, this court is of the opinion that it clearly has jurisdiction over this class of claims. The question involved is really whether the transaction giving rise to this action is one arising out of banking in Puerto Rico. The federal statute creating the plaintiff is set forth in 12 U.S.C.A. § 1461 *et seq.* It is interesting to note that title 12 U.S.C.A. is entitled "Banks and Banking," which fact tends to show that Congress considered federal savings and loan associations as pertaining to "banks and banking," at least for some limited purposes. Thus, their transactions, for those limited purposes, are banking transactions. In synthesis, the statute provides that these associations may receive savings deposits, make loans and invest in certain types of securities, 12 U.S.C.A. § 1464(b) and (c). The pertinent evidence before this court consisted of the original of the mortgage note, the certified copy of the mortgage deed and a sworn statement by the plaintiff's treasurer showing that an account had been opened on plaintiff's books and the same reflected a certain balance. It seems to this court that plaintiff's activities as allowed by statute and as carried on in this particular case are banking transactions within the meaning of the statute conferring jurisdiction to this court. We would not change our opinion even if it were necessary to hold, in order for the transactions in question to be considered banking operations, that plaintiff is a bank, for the limited purpose of the issue at bar.

A bank, according to Black's Law Dictionary, Fourth Edition, is:

"An institution empowered to receive deposits of money, to make loans, and to issue promissory notes * * * *or to perform any one or more of these functions.*" (Emphasis supplied.)

Bouviers Law Dictionary defines a bank as a place for the deposit of money.

The definition of bank found in American Jurisprudence 2d Vol. 10, Banks § 1, is as follows:

"In its more enlarged sense, a bank may be defined as an institution, generally incorporated, authorized to receive deposits of money; to lend money and issue promissory notes usually known as bank notes; *or to perform one or more of these functions.*" (Emphasis supplied.)

A building and loan association that receives deposits of money from the general public, even though it calls them "investments" and permits the withdrawal of said deposit either immediately or upon six months notice, and pays interest on these deposits, even though it calls said interest "dividends" and such deposits are insured by one of the agencies of the federal government is a bank within the meaning of the state statute governing banks. American Building and Loan Association v. State, Alaska, 376 P.2d 370. This is practically identical to the situation of the plaintiff herein.

Defendants' contention that plaintiff is not a bank is based on the assumption that the term "bank" is equivalent to "commercial bank." This is not correct. Commercial banking is only a narrow phase of banking, witness savings banking, mortgage banking, small loan banking and others.

In 1964 the Legislature of the Commonwealth of Puerto Rico enacted a statute known as the "Mutual Savings Bank Act." This legislation is set forth in 7 L.P.R.A. § 1001 *et seq.* in the pocket part supplement. An examination of this statute indicates that both in regard to policy and operation, it is very similar to the statute creating the federal savings and loan associations. That is, both statutes provide for the policy of providing mutual thrift institutions; both provide for the receiving of deposits; both provide for the loaning of money, taking first mortgages on real estate; both provide for investments in securities of the United States, Puerto Rico, and certain municipalities.

But perhaps the most important fact is that the Commonwealth statute provides that a Mutual Savings Bank may be converted into a "thrift institution organized pursuant to federal law" 7 L.P.R.A. § 1011. A thrift institution is defined, among others as a mutual savings and loan association, 7 L.P.R.A. § 1002(5). The converse is also true; the federal statute, in 12 U.S.C.A. § 1464(i), provides for the conversion of a federal savings and loan association into a savings and loan type of institution organized pursuant to the laws of the state, district or territory. (In this Act Puerto Rico is included in the term "state" 12 U.S.C.A. § 1464(d)(13)). In other words, the plaintiff, if it so desired, could be converted into a "mutual savings bank."

It has been held that a credit union is a banking institution, La Valley v. Pere Marquette Emp. Credit Union, 342 Mich. 639, 70 N.W.2d 798. It has even been held that a U. S. Air Force Base Facility that accepted deposits, cashed checks and provided paying and receiving facilities for military and civilian personnel was a "bank" United States v. Papworth, D.C., 156 F.Supp. 842. Similarly, in MacLaren v. State, 141 Wis. 577, 124 N.W. 667, held that a department store was doing a banking business. Although, as stated in 10 Am.Jur. 2d, Banks § 1, "[b]y reason of the development and expansion of the banking business, the term 'bank' does not lend

itself to an exact definition," the activities of the plaintiff giving rise to this action, in the light of the various definitions set forth and the cases cited, are clearly banking operations.

The question of whether the plaintiff is technically a bank, or whether it is something in the nature of a bank, is in realty a question of semantics. The Supreme Court of the United States understands that federal savings and loan associations are conducting a public banking business. The case of Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030, involved the ousting of a conservator appointed by a federal home loan bank to conduct the affairs of a federal savings and loan association. It was alleged that the regulations permitting the appointment of a conservator to operate the business of the savings and loan association were unconstitutional. The Supreme Court, in upholding the regulations, stated as follows:

> "Banking is one of the longest regulated and most closely supervised of public callings. * * * It would be intolerable that the Congress should endow an *Association with the right to conduct a public banking business on* certain limitations and that the Court at the behest of those who took advantage from the privilege should remove the limitations intended for public protection." (emphasis supplied) Fahey v. Mallonee, 332 U.S. 245, 250, 256, 67 S.Ct. 1552, 1554, 1557.

Considering the above, we hold that plaintiff was engaged in the banking business and that the transactions giving rise to this action are banking operations within the meaning of 12 U.S.C.A. § 632.

In view of the foregoing, defendants' Motion to Set Aside the Judgment for Lack of Jurisdiction filed on May 5, 1969, must be, and is hereby, denied.

It is so ordered.