[L. A. No. 2726. In Bank.—April 11, 1912.]

## COUNTY OF SAN LUIS OBISPO, Appellant, v. P. H. MURPHY, as Auditor of the County of San Luis Obispo, Respondent.

Public Officers—Payment of Premium of Bond Furnished by Surety Company—Act of March 25, 1903, Is Constitutional.—The act of March 25, 1903 (Stats. 1903, p. 476), providing for the payment by the state, or county, or cities, or cities and counties, of the premium or charge on official bonds of all state officers (except notaries public), and all county, city, or city and county officers, when given by surety companies, is constitutional.

Id.—What Corporations Are Surety Companies.—The term "surety companies" as used in that act, was intended to include any corporation organized for the purpose of carrying on the business of becoming a surety on bonds and undertakings, which by sections 1056 and 1057 of the Code of Civil Procedure and subdivision 4 of section 955 of the Political Code, is authorized to become the sole surety on any undertaking or bond required by any law of this state, and may be accepted as such by the approved authority in lieu of a bond with natural persons as sureties.

Id.—Constitutional Law—Inhibitions of Constitution not Violated. —That act is not violative either of section 11 of article I of the constitution, requiring all laws of a general nature to have a uniform operation; or of section 21 of article II, prohibiting the granting to any citizen or class of citizens of privileges or immunities which, upon the same terms, shall not be granted to all citizens; or of subdivision 9 of section 25 of article IV, prohibiting local or special laws for the regulation of county and township business.

Id.—Discrimination not to Be Assumed—Grounds for Classification.—It is not to be assumed, for the purpose of nullifying the act, that there was any intention to discriminate in favor of surety companies as against personal sureties, or in favor of certain officers as against others. If a reasonable ground for the conclusion of the legislature confining the operation of the act to bonds given by surety companies can be conceived, the courts must assume that the legislature acted on that ground, and consequently, that the classification made by it was authorized by the constitution.

Id.—Encouragement of Giving Bonds by Surety Companies.—The act may reasonably be construed as one designed to encourage the giving by the officers to whom it is applicable of surety company bonds, rather than personal surety bonds, upon the theory that the public interests will be better protected by such bonds. So construed, there is nothing in the foregoing constitutional provisions that makes the act void because it is applicable only to the premiums and charges on bonds furnished by surety companies.

Id.—Premium Made a Public Charge.—The act may also be reasonably construed as one designed to make the cost of an official bond to the officer furnishing it, a public charge.   The legislature may have reasonably concluded that the cases where a charge is made by a personal surety on an official bond are so inappreciable and few in number that, in reality, the surety corporation bonds "compose the entire class" as to which there is a premium or charge for the risk assumed by the surety, and such a conclusion would warrant the limitation of the provisions of the act to such bond.

Id.—Act Limited to All of Certain Kind of Officers.—The legislature had the power to limit the operation of the act to the bonds of all officers of the classes designated therein, and the fact that it fails to include other kinds of officers, such as justices of the peace and constables, does not render the act violative of such constitutional inhibitions.

Id.—Distinctions Existing as to Other Officers.—Such distinctions exist as to notaries public, who are state officers, and the officers of districts organized within the various counties for special purposes, as warrant their exclusion from the act.

Id.—Officers Whose Compensation Is Fixed by Constitution—Cities Organized under Freeholders' Charter.—The fact that the act may not be operative as to state officers whose compensation is fixed by constitutional provision, or to cities organized and existing under freeholders' charters, does not affect the question of the validity of the act.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.   E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Albert Nelson, District Attorney, for Appellant.

C. P. Kaetzel, and Paul M. Gregg, for Respondent.

ANGELLOTTI, J.—This is an action by the county of San Luis Obispo, by its district attorney, to obtain a decree restraining and enjoining the auditor from allowing and auditing as a county charge a demand of the Aetna Indemnity Company, a surety company, for twenty dollars, the amount of the premium for the year 1910 on the official bond of the county recorder of said county, which demand had been allowed and approved by the board of supervisors thereof. Defendant's demurrer to the complaint was sustained, and, plaintiff having failed to amend, judgment went for defendant.   This is an appeal by plaintiff from such judgment.   The

only question presented by this appeal is whether an act of the legislature entitled: "An act to provide for the payment by the state or counties, or cities, or cities and counties, of the premium or charge on official bonds when given by surety companies," approved March 25, 1903 (Stats. 1903, p. 476), is constitutional.

The act simply provides that, "The premium or charge for bonds given by surety companies for state officials, county officials, city officials, or city and county officials, shall be paid by the state, county, city, or city and county respectively; provided, however, that no premium or charge shall exceed one half of one per cent per annum on the amount of such bond; and provided further, that this act shall not apply to notaries public." No question is suggested herein of any violation of provisions of the constitution prohibiting the increase of the compensation of officers after their election or during their term of office, for the reason that the act in question became a law long prior to the election of a county recorder for the term that included the year 1910.

Our constitution provides as follows: "All laws of a general nature shall have a uniform operation" (art. I, sec. 11); "Nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms shall not be granted to all citizens" (art. I, sec. 21); "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Ninth—Regulating county and township business" (art. IV, sec. 25, subd. 9). It is claimed that the act in question is violative of one or more of these provisions.

No claim is made that the legislature has not the power to make the cost or charge to a public officer of the official bond required by law to be given by him a public charge, and we know of no ground upon which it may properly be held that such power does not exist as to those officers as to whom the legislature has the power to fix the compensation, or provide for such fixing, as in the case of cities and towns operating under the general Municipal Corporation Act.

The term "surety companies" in said act was intended, of course, to include any corporation organized for the purpose of carrying on the business of becoming a surety on bonds and undertakings, which by sections 1056 and 1057 of the Code of

Civil Procedure, and subdivision 4 of section 955 of the Political Code, is authorized to become the sole surety on any undertaking or bond required by any law of this state, and may be accepted as such by the approving authority in lieu of a bond with natural persons as sureties.

Under certain provisions of our Political Code, as they have existed from the adoption of our codes in 1872, a public officer may give a bond signed by natural persons, possessing certain qualifications, as sureties. (Pol. Code, secs. 954 and 955.) We thus have two classes of official bonds with respect to the character of the sureties, and a bond of either class presented by the officer, if it conforms to the requirements of the law in other regards, must be accepted. Except as affected by the act under consideration, the two classes of bonds thus authorized are equally credited, either satisfying the law.

In view of the well-settled presumptions that must be recognized in favor of the validity of an act of the legislature, we are of the opinion that this act cannot properly be held to be violative of any of the constitutional provisions referred to. It is not to be assumed, for the purpose of nullifying the act, that there was any intention to discriminate in favor of surety companies as against personal sureties, or in favor of certain officers as against others. If a reasonable ground for the conclusion of the legislature confining the operation of the act to bonds given by surety companies can be conceived, we must assume that the legislature acted on that ground, and consequently, that the classification made by it was authorized by the constitution. Two such grounds may readily be stated.

The act may reasonably be construed as one designed to encourage the giving by the officers to whom it is applicable of surety company bonds, rather than personal surety bonds, upon the theory that the public interests will be better protected by such bonds. While both classes of bonds were prior to the passage of the act equally credited, and while either must still be accepted when presented by a public officer, when we take into consideration the provisions of our law relating to the conditions and official supervision under which surety companies may transact business, it cannot fairly be said that the legislature may not reasonably have concluded that, while the personal surety bond may still be used at the option of an officer, the surety company bond is a better and safer bond

so far as the public interests are concerned, and the giving of such bonds should be encouraged. Such companies being engaged in the business of furnishing security for a consideration, and an officer furnishing such a bond being necessarily compelled to pay a premium or charge therefor (if the same is not a public charge), while no premium or charge is ordinarily involved in the matter of obtaining personal sureties, manifestly the giving of such bonds in lieu of the personal surety bonds would be much increased by an act making such premium or charge a public charge. Under this construction, the legislature practically says to the officer: While we do not refuse to accept a personal surety bond from you, we believe a surety company bond better and safer for the public interests, and therefore prefer such a bond. If you will give such a bond, the premium charged therefor by the surety company, not exceeding a certain rate, will be paid from the public treasury, thus saving you from the additional expense that would otherwise be imposed upon you by reason of giving a surety company bond instead of a personal surety bond. No reason is apparent to us why the legislature has not the power to so declare, and if this be so, there is nothing in the constitutional provisions above referred to that makes the act void because it is applicable only to the premiums and charges on bonds furnished by "surety companies."

The act may also be reasonably construed as one designed to make the cost of an official bond to the officer furnishing it, a public charge, in the same way that the act of March 20, 1905 (Stats. 1905, p. 477), makes the cost of his bond to an executor, administrator, etc., a lawful expense in the execution of his trust for which he is to be allowed credit in his accounts. In the latter act it is true that there is no express limitation in respect to the character of the sureties, while under the act here involved, the premium or charge collected from the officer as a consideration by a personal surety would not be a public charge. It is a matter of common knowledge, however, that the only persons really engaged in the business of becoming surety on bonds for a consideration, and especially on official bonds, are the corporations authorized by our statutes to engage in such business under such limitations and restrictions as are imposed by law, and that it is only as to a bond given by such a corporation that there is ordinarily any premium or

charge for the risk assumed by the surety. While perhaps an isolated case may be found of an officer being compelled to give to a natural person some pecuniary consideration for his service in becoming a surety on his official bond, we know that such cases are extremely rare, and that in almost every case a personal surety becomes such as a matter of favor to the officer, and without any charge whatever. The legislature may have reasonably concluded that the cases in which a charge is made by a personal surety on an official bond are so inappreciable and insignificant in number that, in reality, the surety corporation bonds "compose the entire class" as to which there is a premium or charge for the risk assumed by the surety, and such a conclusion would warrant the limitation of the provisions of the act to such bond. (See *In re Spencer*, 149 Cal. 401, [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896].)

The act does not apply, in express terms, to bonds given by township officers (unless the term "county officers" may be read to include township officers, a question which we do not decide), being limited to "state officials," "county officials," "city officials," and "city and county officials," and expressly excepts notaries public. Nor does it expressly include district officers, such as the officers of a school district, sanitary district, etc. There is, however, no discrimination therein as between officers of any particular character. By its terms it includes *all* state officers (except notaries public, to whom we shall refer later), *all* county officers, *all* city officers, and *all* city and county officers, and we are of the opinion that, as to an act of this character, nothing further is essential, so far as the constitutional provision involved is concerned. The power of the legislature to prescribe the respective duties of the various classes of county, township, and municipal officers, and to regulate their compensation, cannot be doubted (Const., art. XI, sec. 5). We do not see how any provision applicable to all officers of a particular class, such as county clerks or sheriffs, etc., going to the question of the compensation, or the character or manner of qualification (including bonds), can reasonably be held to be inhibited by such provisions. For instance, it would not be doubted that the legislature might require an official bond to be given by members of certain classes of such officials, without requiring such a bond of mem-

bers of other classes. It might dispense altogether with the requirement that justices of the peace and constables (the officers provided by law for townships) give any official bond. Requiring a bond from them, it might require a bond of a different character from that required of other officials, or might make different regulations as to sureties from those made as to other officers. The difference in the character of the respective officers and the duties to be performed furnish such a basis for different regulation as to render it impossible for a court to say that there was not reasonable ground for the action of the legislature in this regard. As long as such an act applies equally to all of a particular class of such county, township, or municipal officers, it would seem, so far as the courts are concerned, to apply to all who stand in the same relation to it, and, consequently, to be a general law. We, therefore, are unable to see that the failure to include bonds given by justices of the peace and constables among those on which the premium or charge is a public charge, renders the act violative of any of the constitutional provisions referred to. As to notaries public, who are state officers, and the officers of districts organized within the various counties for special purposes, such as school districts, sanitary districts, irrigation districts, etc., it is obvious, in view of what we have said, that such distinctions exist as would warrant their exclusion from an act of this character.

It may be doubted whether the act here involved has any force as to state officers whose compensation is fixed by constitutional provision, but as to this we do not decide. It would seem, too, that it cannot have any force as to the officers of a city or city and county, organized and operating under a freeholders' charter. But these considerations do not affect the question of the validity of the act. There are many instances of general laws applicable to cities which are not operative in cities organized and existing under freeholders' charters, by reason of the fact that under certain provisions of the constitution the regulation of the matters covered by such acts is controlled by the provisions of the freeholders' charter. The validity of such laws has never been doubted. It is sufficient for all purposes that such acts are operative as to all cities as to which the legislature has control in regard to the matters embraced therein. And the same is true as to the

matter of the state officers whose compensation is fixed by the constitution. It is sufficient if the act is operative as to the state officers of any proper class over which the legislature has control in reference to the matters embraced therein.

Whatever may be our views as to the policy of the legislation here involved, we are unable to see that it is violative of any provision of our constitution.

The judgment is affirmed.

Sloss, J., Shaw, J., Henshaw, J., and Melvin J., concurred.

Beatty, C. J., concurred in the judgment.