[Civ. No. 4753. Third Appellate District.—October 17, 1932.]

THE PEOPLE, Respondent, v. GLENN–COLUSA IRRI-
GATION DISTRICT (a Body Politic and Corporate),
Appellant.

Hankins & Hankins for Appellant.

U. S. Webb, Attorney-General, and Eugene D. Bennett and Ralph W. Scott, for Respondent.

JAMISON, J., *pro tem.*—This action was brought to enjoin defendant from diverting water from the Sacramento River, through its irrigation canal, until such time as a fish screen is constructed and maintained, by defendant, so as to prevent the destruction of fish in consequence of such diversion.

Defendant demurred to the complaint upon the grounds that the court had no jurisdiction of the person of the defendant, nor of the subject of the action, that it did not state facts sufficient to constitute a cause of action, and that several causes have been improperly united, also for nonjoinder of parties defendant and for uncertainty.

The demurrer was overruled and defendant answered and a trial of said action being had, judgment was rendered for plaintiff and from this judgment defendant appealed.

The facts are substantially as follows: Appellant was organized in 1920 as an irrigation district. Upon its organization it took over the properties and water rights of the Sacramento West Side Canal Company and has ever since then, and is now furnishing water to lands within the boundaries of the district.

The amount of water diverted by appellant varies from 1600 to 1800 second-feet and is approximately one-half of the flow of the Sacramento River, and irrigates about 100,000 acres of land. Appellant diverts this water from the said river by means of a main canal located on the west side of the river. This diversion is accomplished by means of a battery of pumps located near the head of the canal and a short distance from the river. These pumps lift the water from the river to said canal, although during certain periods of high water diversion occurs by gravity. The lift varies according to the stage of the water in the river from

a minimum to ten feet. Through this main canal the water is conveyed across Stony Creek, and thence to the land in said district through the medium of subcanals, laterals and ditches. From the fields all water, if any remains, drains into a main ditch known as Reclamation District No. 2047, which in turn empties into the Sacramento River at Knights Landing.

During the irrigation season a gravel dam is thrown across Stony Creek, near its point of confluence with the Sacramento River, to prevent the diverted water returning to the river, the said dam being removed at the close of the irrigation season.

According to the evidence produced by plaintiff, large numbers of fish have been and will be drawn through the said pumps and destroyed. In 1929 from April 18th to August 20th a series of seining operations were conducted below the pumps by the Fish and Game Commission, and the result of these operations shows that during this period a total of 5,575 fish were caught in the nets, and of this number 4,502 were food and game fish, and of which sixty-seven per cent were dead or damaged, among which were a large number of salmon, bass and shad fingerlings. This result was obtained from seventeen per cent of the cross-channel area that was seined. Respondent claims that based upon this percentage, at least 50,000 fish were sucked through these pumps during the time said seining was done.

Following suggestions and requests from the Fish and Game Commission that appellant install and maintain a fish screen above its said pumps in said canal, appellant signified its willingness to do so provided the commission would make an order therefor as provided by section 629 of the Penal Code. Thereupon under date of June 26, 1920, the board of fish and game commissioners made an order to install and maintain a fish screen above the said pumping plant. A fish screen was constructed and placed above the said pumps by appellant, but same was never accepted or approved by the commission and about one year thereafter it was washed away and destroyed, and since then no fish screen has been maintained in said canal.

Appellant contends that injunction is not the proper remedy in this case; that the remedy given by law under the circumstances disclosed by the facts in this action is by

a proceeding in *mandamus* against the district and the directors thereof to compel it and them to install and maintain a fish screen in said canal.

Assuming that a proceeding by *mandamus* would have attained the same result as that which was attained by this proceeding by injunction, still it does not follow that respondent must have had recourse to that proceeding alone, if the law authorized this proceeding by injunction.

Section 3479 of the Civil Code defines a nuisance as follows:

"Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

And section 3480 of said code provides:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

In the case of *People* v. *Truckee Lumber Co.*, 116 Cal. 397 [48 Pac. 374, 58 Am. St. Rep. 183, 39 L. R. A. 581], an injunction was upheld that prohibited the dumping into the Truckee River sawmill refuse that was destructive to fish. In the course of that opinion the court said:

"Anything which is 'an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or any considerable number of persons', is a public nuisance. (Pen. Code, sec. 370; Civ. Code, secs. 3479, 3480.) The fish within our waters constitute the most important constituent of the species of property commonly designated as wild game the general right and ownership of which is in the people of the state (*Ex parte Maier*, 103 Cal. 476, 483 [37 Pac. 402, 42 Am. St. Rep. 129]), as in England it was in the king; and the right and power to protect and preserve such property for the common use and benefit is one of the recognized prerogatives of the sovereign, coming to us from the common law, and preserved and expressly provided for by the statutes of this and every other state of the Union.

The complaint shows that by the repeated and continuing acts of defendant this public property right is being and will continue to be greatly interfered with and impaired; and that such acts constitute a nuisance, both under our statute and at common law, is not open to serious question. (*People* v. *Elk River etc. Co.*, 107 Cal. 219 [40 Pac. 486, 48 Am. St. Rep. 121].)''

Injunctions to prevent the destruction of fish have also been upheld in the following cases: *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [234 Pac. 398, 38 A. L. R. 1186] ; *People* v. *Stafford Packing Co.*, 193 Cal. 719 [227 Pac. 485, 490] ; *People* v. *K. Horden Co.*, 215 Cal. 54 [8 Pac. (2d) 481].

It appears from the evidence, and in fact is a matter of common knowledge, that salmon, trout, shad, bass and other · fish are present and exist in the Sacramento River, and that this river and its tributaries afford breeding ground for them. These fish constitute an important asset to the people of this state, for commercial and food purposes, and have been deemed so important, both by the federal and state authorities, that by their united efforts, through their fish hatcheries, 124,000,000 salmon fish fry have been planted in this river since the year 1916. Yet, in spite of these efforts, there has been a steady decline in the number of salmon in this river. To such an extent has this decrease reached, that at present the run of salmon in said river amounts to only about one-fifth of what it was twenty years ago. One of the factors contributing to this decline, according to respondent's witnesses, who made a study of these matters, is the diversion of the waters of said river through irrigation canals and ditches that are not provided with means of preventing said fish from entering therein.

The fish that escape injury and destruction while being sucked through appellant's pumps have a long and precarious journey ahead of them before they can hope to reach the river again. The evidence of experts is that the salmon, bass and shad fingerlings start down the river as soon as they are hatched or released from the hatcheries; that the salmon fingerlings cannot exist when the water reaches a higher temperature than about eighty degrees and that the water in the irrigated fields, through which the salmon fingerlings that are carried into said canal must pass, is warmer

than this and consequently these salmon fingerlings must perish, while many of the other fish will become stranded in passing through these irrigated fields and will die.

■ The title to and property in the fish within the waters of the state are vested in the state of California and held by it in trust for the people of the state (*Geer* v. *Connecticut*, 161 U. S. 519 [16 Sup. Ct. Rep. 600, 40 L. Ed. 793]; *People* v. *Monterey Fish Products Co., supra; People* v. *Stafford Packing Co., supra*). In this last-named case the court said:

"Having determined that the acts complained of constituted a wrongful invasion of those property rights and having further determined that the threatened continuance thereof would work irreparable injury for which there was no adequate remedy at law, there was a complete foundation for equitable interposition and equitable relief."

■ Appellant contends that, as the irrigation district was formed under an act of the legislature of this state, and was, by the laws of this state and by an act of Congress, granted the right to divert water from the Sacramento River for the irrigation of the land lying within the district, by such diversion it was not guilty of creating a public nuisance, and in support of this contention cites section 3482 of the Civil Code, which is as follows:

"Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

We find nothing either in the said act of Congress or in the statutes of this state which gives to appellant express authority to divert the waters of said river regardless of its duty in so doing to protect the fish therein. The general rule upon this subject is thus expressed in Corpus Juris, volume 46, page 674:

"A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury."

In the case of *Holyoke Water-Power Co.* v. *Lyman*, 15 Wall. (82 U. S.) 500, 513 [21 L. Ed. 133], the court held

that the grant of the right to erect a dam, if made by the legislature, was to be construed to be under the implied condition to keep open the fishways, unless such implication was excluded by an express provision exempting the grantees from such obligation.

■ Appellant next contends that section 629 of the Penal Code is unconstitutional as being an attempt to give the Fish and Game Commission judicial powers in violation of section 1, article VI, of the Constitution. The recent case of *Globe Cotton Oil Mills* v. *Zellerbach*, 200 Cal. 276 [252 Pac. 1038, 1039], appears to have settled this question adversely to this contention. In that case the court said: "This court is of the view, however, that, admitting that the Fish and Game Commission cannot be granted any power which constitutionally belongs exclusively to the judicial department of the state government, the granting of power to hold hearings and determine facts incidental to the regulation of fish and game, and to the granting of permits to take and use fish, is valid as an administrative or regulatory power, and in nowise transgresses upon the exclusive function of the judicial department." (See, also, *In re Potter*, 164 Cal. 735 [130 Pac. 721].)

■ Appellant also claims that the title to the Amendatory Act of 1915 (Stats. 1915, p. 696) is insufficient. The title to this amendatory act is as follows: "An Act to amend section 629 of the Penal Code, relative to the placing and maintaining of screens over the inlets of pipes, flumes, ditches, canals and mill-races, taking water from any river, creek, stream or lake in which fish have been placed or may exist."

It is well settled that the constitutional provision requiring the subject of the act to be expressed in the title must be liberally construed, and that all that is required to be contained therein, in order to meet the constitutional requirement, is a reasonably intelligent reference to the subject to which the legislation of the act is to be addressed. It is not necessary that it should embrace an abstract or catalogue of its contents. (*Estate of Wellings*, 192 Cal. 506, 519 [221 Pac. 628]; *Matter of Schuler*, 167 Cal. 282 [139 Pac. 685, Ann. Cas. 1916C, 706]; *In re Weymann*, 92 Cal. App. 646 [268 Pac. 971].) The title to this amendment was sufficient.

■ Appellant produced evidence to the effect that the assessed value of the land in its district was between four and five million dollars. There was evidence on the part of respondent that a screen that would prevent fish from being diverted from the river through said canal, and one that would be accepted and approved by the Fish and Game Commission, would cost about $11,000. Appellant maintains that before this proceeding by this injunction can be sustained and enforced respondent must prove that the district possessed the financial ability to install the screen. The remedy sought in this proceeding is injunctive relief only, and in nowise mandatory. It merely enjoins the district from continuing a nuisance to the detriment of the people of this state and points out how this nuisance can be prevented at a minimum cost to appellant.

■ We see no merit in appellant's contention that because its diversion of the waters of the Sacramento River was by grant from the federal government the courts of this state have no jurisdiction of the present action. If this injunction interfered with the navigation of the river, the contention would be well taken, but there is no evidence that this injunction interferes with navigation in the slightest degree.

■ Independent of the provisions of section 629 of the Penal Code the facts disclosed in this case constitute a nuisance at common law (*People* v. *Truckee Lumber Co., supra*), and an action to restrain or abate said nuisance is authorized by section 731 of the Code of Civil Procedure.

■ The attorney-general had authority to institute this action in the name of the people of this state. (*People* v. *Truckee Lumber Co., supra;* 3 Cal. Jur. 566.)

■ We are of the opinion that the complaint states a cause of action, that it is not subject to demurrer and that the findings of the court are sustained by the evidence.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 16, 1932, and an application by appellant to have the cause heard in the

Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 15, 1932.