[Civ. No. 12915. Second Dist., Div. Two.—April 8, 1941.]

COUNTY OF LOS ANGELES, Appellant, v. HARRY C. HURLBUT, Respondent.

90

J. H. O'Connor, County Counsel, and Gerald G. Kelly, Deputy County Counsel, for Appellant.

Alford P. Olmstead and Arthur B. Armstrong for Respondent.

MOORE, P. J.—Plaintiff appeals from a judgment dismissing the action following the court's order sustaining an objection to the introduction of any evidence on the ground that the amended complaint failed to state a cause of action.

The action was brought under section 2224 of the Welfare and Institutions Code. By its pleading plaintiff alleged that, commencing July, 1936, and continuing until the time of filing the action, plaintiff had paid in monthly installments the total sum of $1515 to Cora E. Hurlbut, the mother of defendant; that Cora E. Hurlbut as the recipient of said moneys is now entitled, and will in the future be entitled, to old age payments pursuant to the Welfare and Institutions Code; that Cora E. Hurlbut has no spouse and that defendant is her only adult child who has filed an income tax return under the Personal Income Tax Act, for the year 1939; that the board of supervisors has determined that defendant has filed an income tax return for 1939 and that he has the pecuniary ability to support or contribute to the support of his mother; "that defendant has the pecuniary ability to support or contribute to the support of Cora E. Hurlbut in that he had a steady income of approximately $331.56 per month and other property".

The court sustained the general objection to any evidence and ordered the dismissal of the action upon the theory that section 2224 of the Welfare and Institutions Code, by limiting actions for reimbursement to those cases wherein defendant filed an income tax return was discriminatory and class legislation.

On this appeal, respondent makes three affirmative contentions: (1) That section 2224 created a discrimination against those filing income tax returns; (2) that the amendments to section 2224 of 1937, 1939, and of 1940 are unconstitutional and void because of failure to include in the title the subject covered; (3) that the complaint fails to allege a cause of action in that it does not allege the ability of the defendant to pay any portion of the aid granted.

█ (1) Respondent contends that section 2224 is violative of the inhibition contained in the Fourteenth Amendment to the federal Constitution which guarantees equal protection under the law to any person within its jurisdiction. He argues that the filing of one's income tax return cannot be a reasonable test of one's ability to support, or to contribute to the support of, his parent; that the section, therefore, creates a discrimination against him and a privilege in favor of those equally able financially to pay for the support of their indigent parents. Section 2224 did not create privileges or discriminations, as inhibited by the Fourteenth Amendment to the federal Constitution. Neither does it lack uniformity of operation as required by section 11, article I of the Constitution of California. The entire purpose behind the scheme of proceeding against those filing income tax returns was to abbreviate the labors of those investigating the pecuniary ability of the kindred of a recipient. The financial ability of the recipient's adult child is the first matter to be determined by a court. His liability is already fixed by law. (Sec. 206, Civ. Code; sec. 270, Pen. Code.) The final determination of the court is not whether the child filed an income tax return but whether he has the ability to pay for the support of an indigent parent. Filing of the return is an incident that concerns the board of supervisors in their administration of the Old Age Security Law. The fact of the filing of an income tax return has primarily to do with public economy. █ The legislature determined that it is a public advantage to cease an investigation of the "liable" kindred with the ascertainment that the latter did or did not file an income tax return. Such determination cannot be avoided by the courts unless it is palpably arbitrary. (*In re Weisberg,* 215 Cal. 624, 629 [12 Pac. (2d) 446].) We find nothing arbitrary in the provision.

The determination by the board of supervisors that the spouse or adult child of the recipient did not file an income tax return was calculated to avoid the necessity of further investigation. But the determination by the board that the adult child or spouse had filed a return was deemed by the legislature to be a sufficient basis for the board to continue its investigation. In the case of one who files a return, the board must then proceed to "determine whether such spouse or adult child is pecuniarily able to support or contribute to

the support of such person". The ultimate responsibility of the adult child is not to be determined by the board. Their only power ultimately affecting one who is legally liable is to request the proper civil legal officer to proceed against such adult child. Not even the board has authority to institute the action. It has only the authority to request the proper counsel to "proceed against the kindred in the order of their responsibility to support." If counsel charged with the duty of instituting such proceeding is convinced that he should act, the duty devolves upon him then to institute an action and to convince the court that the defendant named is pecuniarily able to support or contribute to the support of his indigent spouse or parent.

But conceding for the sake of the argument that the legislative intent was to proceed only against those filing income tax returns, in view of its obvious purpose, this is a natural classification which the legislature, in the exercise of its discretion had the right to designate as the first element in the proof of financial ability. Every presumption favors the legislative classification. (*In re Cardinal,* 170 Cal. 519, 521 [150 Pac. 348] ; *Cohen* v. *City of Alameda,* 168 Cal. 265 [142 Pac. 885].) "If the classification is reasonable, including all that may fairly be said to be similarly situated and affecting alike all of those, there is no forbidden discrimination. The question of classification is primarily one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements. The presumption in the courts is in favor of the fairness and correctness of the determination by the legislative department, and the courts are not privileged to overturn that determination unless they can plainly see that the same was without warrant in the facts." (*In re Cardinal, supra,* p. 521.) The legislature's judgment "on the question whether or not a particular provision shall be made for any class of cases, and as to the classification thereof, is not to be interfered with except for very grave causes and where it is clear, beyond reasonable doubt, that no sound reason for the legislative classification, and for the different provisions regarding the same, exists." (*Cohen* v. *City of Alameda, supra,* p. 267.) The legislature's discretion is not subject to judicial review unless it clearly appears to have been exercised arbitrarily and without any show of good reason. (*In re Martin,* 157 Cal. 51, 57 [106

Pac. 235, 26 L. R. A. (N. S.) 242].) Such a law cannot be held invalid solely because this court might conceive some general law that would have accomplished the purpose aimed at by the section under consideration. (*Mintzer* v. *Schilling*, 117 Cal. 361, 363 [49 Pac. 209]; *Argyle Dredging Co.* v. *Chambers*, 40 Cal. App. 332, 342 [181 Pac. 84].) If the legislature acted upon any conceivably reasonable ground, the courts must assume that the legislature acted upon that ground. We submit that the suggestions above made as to the aim and purpose of the legislature are conceivably reasonable. (*County of San Luis Obispo* v. *Murphy*, 162 Cal. 588 [123 Pac. 808, Ann. Cas. 1913D, 712].) ■ It follows that if the legislature acted upon either the theory that the public economy would be conserved or upon the hypothesis that it would best promote the public welfare to require only him who has filed an income tax return to contribute to the support of his indigent spouse or parent, then this act must be upheld as an exercise of constitutional power. ■ Furthermore, the section is not a special law merely because it does not include all kindred whose spouses or parents have been the recipients of the state's bounty. It meets the requirements of the Constitution if it relates to, and operates uniformly upon, all those of the class lawfully selected. (*City of Los Angeles* v. *Lankershim*, 160 Cal. 800 [118 Pac. 215]; *In re Martin, supra*.) ■ A general law is one which operates upon all persons to whom it applies and applies equally to all persons in the same category. (*McDonald* v. *Conniff*, 99 Cal. 386 [34 Pac. 71]; *Cody* v. *Murphey*, 89 Cal. 522 [26 Pac. 1081].)

■ (2) Respondent contends that the inclusion within the amendments to section 2224, enacted in 1937, 1939 and 1940 of the provision that actions shall be authorized by the board of supervisors only in the case of that spouse or adult child who has filed a return under the Personal Income Tax Act, is unconstitutional for the reason that there was nothing in the title of any of the three amendments to indicate that action should be taken against the kindred of the recipient of the relief. In order to avoid misunderstanding the observations hereafter to be made, we shall trace briefly the origin of the section under consideration.

The legislature of 1929 enacted a statute whose title reads as follows:

"An act to provide for the protection, welfare and *assistance of aged persons in need* and resident in the State of California, providing the method therefor, making an appropriation therefor, and prescribing penalties for the violation of the provisions of this act."

This statute prescribes the qualifications of those aged persons entitled to assistance; requires the transfer of any property of the applicant to the board of supervisors; makes the decision of the board as to the amount allowable final; provides for appeal and makes other provisions which are necessary to the administration of the act. (Stats. 1929, chap. 530, p. 914.) This act was the initial step taken for the protection, welfare and assistance of aged persons outside of institutional aid.

In 1931 the legislature enacted an amendment to the act of 1929, and its title reads as follows:

"An act to amend sections 2, 4, 5, 13, 14, 16, 22 and 23, and to repeal section 24 of Chapter 530, statutes of 1929, entitled 'An act to provide for the protection, welfare and assistance of aged persons in need and resident in the State of California, providing the method therefor, making an appropriation therefor, and prescribing penalties for the violation of the provisions of this act', approved May 28, 1929, and to add thereto new sections to be numbered 2½ and 18½, relating to the *protection, welfare and assistance of aged persons in need,* and resident in the State of California." (Approved by the Governor June 5, 1931. In effect August 14, 1931, Stats. 1931, chap. 608, p. 1310.)

The practical effect of the new act was to improve the workability of the Old Age Security Law by modifying its procedure.

In 1935 the legislature enacted a statute whose title reads as follows:

"An act to amend sections 2, 2½, 3, 4, 10, 13, 14, 15, 18½ and 21, to add section 24, and to repeal sections 5 and 9 of the Old Age Security Act of the State of California, *relating to aid to the aged.*"

In the body of the act is found the following language: "Aid granted to any person under the provisions of this act shall constitute a *debt of such person,* to the amount of such aid, to the State of California and the County . . . recovery may be had upon such debt out of any property of the re-

cipient not exempt from execution (Stats. 1935, chap. 633, p. 1767; Deering's 1935 Supp., Act 5846, § 4).

In 1937 the legislature enacted the Welfare and Institutions Code "revising the law relating to and providing for *protection, care and assistance*" *to aged persons* and others in need. (Approved May 25, 1937, Stats. 1937, chap. 369, p. 1005.) Section 2224 of that code reads as follows:

"If the person receiving aid has within the State a spouse or adult child pecuniarily able to support said person, the board of supervisors shall request the district attorney or other civil legal officer of the county or city and county granting such aid to proceed against the kindred in the order of their responsibility to support. Upon such demand the district attorney or other civil legal officer of the county or city and county granting aid shall, on behalf of said county or city and county, maintain an action in the superior court of the county or city and county granting such aid, against such relatives in the order named, to recover for said county or city and county such portion of the aid granted as such relative is able to pay. Any sum so recovered shall be credited by the county or city and county to the county or city and county, and to the state in proportion to the contributions of the county or city and county and state respectively.

"The granting of or continued receipt of aid shall not be contingent upon such recovery." (Stats. 1937, chap. 369, p. 1005.)

Later in the same session another act was adopted, whose title reads as follows:

"An act to amend sections 2, 2½, 3, 4, 14, 15, 16, 17, 18, 18½ and 24, to add sections 3.5, 5 and 25 and to repeal section 8 of the Old Age Security Act of the State of California or to amend sections 2020, 2024, 2140, 2160, 2162, 2163, 2181, 2182, 2183, 2185, 2186, 2187, 2188, 2189, 2200, 2221 and 2225, to add sections 2009 and 2025 to and to repeal sections 2143, 2226 and 2227 of the Welfare and Institutions Code, relating *to aid to the aged.*" (Stats. 1937, chap. 405, as amended, p. 1343.)

Section 5 of that act is identical with section 2224 of the Welfare and Institutions Code quoted above. That section 5 was to become effective only (p. 1351) in the event of a failure to enact the Welfare and Institutions Code. Since that code was then adopted, we have only to observe the

identity of the two sections and to emphasize the language contained in the last quoted title, to wit: *relating to aid to the aged.*

In 1939, the legislature enacted a statute whose title reads as follows:

"An act to amend sections 2007, . . . 2224 and 2225 of, and to add sections 2160.5 . . . to the Welfare and Institutions Code, *relating to aid to the aged.*" (Stats. 1939, amended, pp. 2238, 2239, chap. 719.)

By section 8 of that act, section 2224 of the Welfare and Institutions Code was amended to read as follows:

"2224. If the person receiving aid has within the state a spouse or *adult child filing a return under the Personal Income Tax Act of 1935* and pecuniarily able to support said person, the board of supervisors shall request the district attorney or other civil legal officer of the county granting such aid to proceed against the kindred in the order of their responsibility to support. Upon such demand the district attorney or other civil legal officer of the county granting aid shall, on behalf of said county, maintain an action, in the superior court of the county granting such aid, against said relatives, in the order named, to recover for said county such portion of the aid granted as said relative is able to pay and to secure an order requiring the payment of any sums which may become due in the future for which the relative may be liable. Any sum so recovered shall be credited by the county to the county, to the State and to the Federal Government in proportion to the contributions of each respectively, or in the manner prescribed by the State Department of Social Welfare.

"The granting of or continued receipt of aid shall not be contingent upon such recovery.

"Notwithstanding any of the provisions of The Personal Income Tax Act of 1935, the Franchise Tax Commissioner shall upon the written request of the board of supervisors or the State Department of Social Welfare, verify the fact of whether or not the spouse or adult child of a recipient of aid under this chapter has filed an income tax return under The Personal Income Tax Act of 1935."

The legislature at its special session in February, 1940, amended section 2224 by an act, the title of which reads as follows:

"Act to amend sections 2224 and 2227 of, and to repeal sections 2226 and 2229 of the Welfare and Institutions Code relating to aid to the aged, and providing for the cancellation and release of certain agreements affecting real property, heretofore required of recipients of *aid to the aged* and their heirs, declaring the urgency thereof and providing that this Act shall take effect immediately."

The body of section 2224 as amended in 1940 reads as follows:

"2224. The board of supervisors shall determine if the person receiving aid has within the State a spouse or adult child filing a return under The Personal Income Tax Act. If the board of supervisors finds that the spouse or adult child of the recipient of aid has not filed an income tax return under The Personal Income Tax Act, the board shall not further investigate the financial resources of such spouse or adult child. If, however, the board of supervisors finds that the recipient of aid does have a spouse or adult child filing such a return, the board shall determine whether such spouse or adult child is pecuniarily able to support or contribute to the support of such person. If in the opinion of the board of supervisors the spouse or adult child who has filed such a return is pecuniarily able to support or contribute to the support of the recipient of aid, the board of supervisors shall request the district attorney or other civil legal officer of the county granting such aid to proceed against such kindred in the order of their responsibility to support. Upon such demand the district attorney or other civil legal officer of the county granting aid shall, on behalf of said county, maintain an action, in the superior court of the county granting such aid, against said relative, in the order named, to recover for said county such portion of the aid granted as said relative is able to pay, and to secure an order requiring the payment of any sums which may become due in the future for which the relative may be liable. Any sum so recovered shall be credited by the county to the county, to the State and to the Federal Government in proportion to the contributions of each respectively, or in the manner prescribed by the State Department of Social Welfare.

"The granting of or continued receipt of aid shall not be contingent upon such recovery.

"Notwithstanding any of the provisions of The Personal Income Tax Act, the Franchise Tax Commissioner shall upon the written request of the board of supervisors or the State Department of Social Welfare, verify the fact of whether or not the spouse or adult child of a recipient of aid under this chapter has filed an income tax return under The Personal Income Tax Act.

"Any person who uses or discloses for any purpose whatsoever any information obtained from the Franchise Tax Commissioner other than as may be necessary in carrying out the provisions of this section shall be guilty of a misdemeanor. (Added by Stats. 1937, Ch. 375; amended by Stats. 1937, Ch. 405, by Stats. 1939, Ch. 719, and by Stats. 1940, Ch. 11.)"

It will be observed at this point and henceforth borne in mind that the body of the section as amended in 1940 made no substantial alteration in the section as amended in 1939 or as it stood following its amendment in 1937. The changes in both acts of 1939 and 1940 were with reference to subsidiary and procedural matters. The sole purpose of the changes in the section was to lighten the burden of the board of supervisors by terminating its investigation upon ascertaining that the kindred had not filed a personal income tax return.

In addition to the point that the acts of 1939 and 1940 authorized action to be taken only against those who have filed income tax returns, respondent attacks the act of 1937 upon the ground that it did not contain in its title any indication of the legislative intention to make the moneys furnished the recipient of relief a debt of the kindred. The attack, therefore, made upon all three amendatory acts is that the intention to hold the kindred responsible for money furnished (1937) and the intention to sue only such kindred as may have filed income tax returns (1939, 1940) was not included in any title. It has already been observed that in the incipient act of 1929, the purpose of the legislation was to provide for assistance to the needy aged. This was repeated in the amendatory act of 1931. Then the act of 1935 created the Old Age Security Act by using a part of the statutes of 1929 and 1931 above quoted. The title of the 1935 act indicated that it related to the *aid to the aged*. The title of each subsequent act contains that identical phrase which truly indicates the subject treated in the body of each act. So far as

the failure to indicate a change of the debtor from the recipient to his kindred (1937) and the addition of the provision to pursue only those kindred who may have filed personal income tax returns (1939, 1940),—all may be treated under the same heading so far as the alleged invalidity of the statute is concerned by reason of the failure of the title to indicate the purpose of the act.

We shall first consider whether the act of 1937 is void by reason of the omission from the title of the purpose of the legislature to make an adult child liable for the support of his indigent parent. The language of the Constitution is that if any subject embraced in an act is not expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title. (Art. IV, sec. 24.) We cannot agree with the contention of respondent for the reason that the *subject* of each amendatory act is expressed in its title and each treats of the same subject as that of the act of 1929.

Long prior to the creation of the Old Age Security Act, it was obligatory upon every adult person to provide, if pecuniarily able, for the support of his necessitous parent. Section 206 of the Civil Code, enacted in 1872, makes it the duty of a child to support his indigent parent to the extent of his ability. But before the Constitution of this state was written and from time immemorial in most of the civilized states of the earth, it had been considered the obligation of every person to protect his enfeebled and indigent parent against want. To do so was an obligation of each adult child, pecuniarily able to contribute to such support. No judicial proceeding was ever necessary to determine liability. That was fixed by the statutes hereafter cited. Therefore, in reading the title of the act of 1937, which indicates that the act relates to *aid to the aged,* it was unnecessary to sound an alarm or to invoke the aid of a legal scholar for any literate person to ascertain that the adult children of the indigent aged have an interest in the statute which is about to follow such title.

It is not necessary that the title of an act should embrace an abstract or catalogue of its contents. (*Abeel* v. *Clark,* 84 Cal. 226, 229 [24 Pac. 383].) So long as the provisions of a statute are germane to the subject matter of the title, no violence is done to the Constitution in omitting from

the title an index of all such provisions. (*Ex parte Halla-well*, 155 Cal. 112, 114 [99 Pac. 490].) ▮ Every provision of an act which is closely allied to the subject expressed in the title is germane to it. (*Utah State Fair Assn.* v. *Green*, 68 Utah 251 [249 Pac. 1016].) ▮ The purpose of the constitutional provision is merely to prevent legislators or the public from being misled by titles to bills whereby legislation relating to one subject might be obtained under the title of another subject. (*Abeel* v. *Clark, supra.*) In that case the title of the act related to vaccination in general but the body of the act related only to pupils attending public schools. If the title contains a reasonable intimation of the matters considered by the legislature the public is not misled. It is customary to state the subject of an act in the fewest possible words and this custom was known to the framers of the Constitution. (*Ex parte Liddell*, 93 Cal. 633 [29 Pac. 251].) ▮ The legislature should not be held to technical nicety in entitling proposed legislation under penalty of having the enactment fail at the hands of a too critical court. (*Estate of Elliott*, 165 Cal. 339, 344 [132 Pac. 439].) Where a title indicated a proposed regulation of examination of applicants for those who sought licenses to treat injuries and deformities, it was sufficiently comprehensive to cover the regulation of business of those engaged in healing or treating the sick. (*People* v. *Jordan*, 172 Cal. 391 [156 Pac. 451].) An act by whose title the statute was to define and regulate the business of banking was held sufficient to cover provisions relating to trust companies and the appointment of such companies as executors of estates, which subjects are germane to the banking business. (*Estate of Wellings*, 192 Cal. 506 [221 Pac. 628].)

Where an act provides for the posting of a bond by one who engaged in a cleaning, dyeing and pressing shop, the statute is not void because its title made no specific mention of the bond requirements, but referred only to the regulation of such establishments and "providing ways and means for enforcement" etc. (*In re Weisberg, supra.*) Where the original act relating to the organization and management of county water districts provided by section 6 of the act that the district should have power "to store water for the benefit of the district and to conserve water for future use . . . to sue . . . in the name of the district . . . involving the ownership of waters . . . or of any lands situated

therein", an amendment to the section giving the district additional powers to maintain actions to prevent interference with or diminution of the natural flow of any stream or subterranean supply of waters used for any purpose and to prevent interference with such waters was not violative of the Constitution because there was no mention in the title to the amendatory act of any of the new powers conferred. Such powers are incidental to the general purposes of the act. (*Coachella Valley County Water Dist.* v. *Stevens,* 206 Cal. 400, 406, 409 [274 Pac. 538].)　　Likewise, where the general purpose of the original act was to grant aid to the aged in need, any additional powers conferred for the purpose of altering the procedure of the agency which administers such aid do not treat of a new subject. Hence a reference in the title of the amendatory act to the general subject and to the number of the code section amended or a reference to the chapter and sections of the statutes containing the act amended is sufficient compliance with the constitutional requirements of section 24, article IV.

A title which reads: "An Act to add another section to the Code of Civil Procedure, relating to incompetent persons" is not obnoxious to the constitutional inhibition where the body of the proposed section provides that "The phrase 'incompetent', 'Mentally incompetent' and 'incapable', as used in this chapter, shall be construed to mean any person, who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons". (*Matter of Coburn,* 165 Cal. 202 [131 Pac. 352].) A reference in the title of the amendatory act to the general subject is sufficient. (*Ibid.*)

The title of an act which read "An Act to amend section 61 of the Civil Code relating to the granting of divorces" is not invalid because it relates to prohibitions upon marriage and not to granting of divorce. (*Estate of Elliott,* 165 Cal. 339, *supra.*) In the Elliott case, it was held that the title of an act would have been sufficient if it had read simply an "Act to amend section 61 of the Civil Code." Where the title of an act read: "An Act to amend section 629 of the Penal Code relative to the placing and maintaining of screens over

inlets of pipes . . . taking waters from any rivers . . . in which fish have been placed or may exist'' did not violate the Constitution because the body of the act conferred upon the fish and game commission power to hold hearings and determine facts incidental to the regulation of fish and game and to the granting of permission to take and use fish. (*People* v. *Glenn-Colusa Irr. Dist.*, 127 Cal. App. 30 [15 Pac. (2d) 549].)

From the foregoing and numerous other cases, it appears to be the established law of this state that the title of an act need not embrace a catalogue of the provisions of the statute; that a code section may be amended by number; and that any part of a statute may be so supplemented as long as the provisions of the body of the amendatory act are germane to the subject expressed in its title. It is well settled that the limitation of section 24, article IV of the Constitution must be liberally construed in that it requires but a ''reasonably intelligent reference to the subject to which the legislation of the act is to be addressed.'' (*Estate of Elliott, supra*, p. 344.)

The duty of maintaining the indigent aged is instinctive. The obligation resting upon the spouse, the parent and the child has been reciprocal under custom from time immemorial. It is now expressed in the numerous statutes of this state. Sections of the Welfare and Institutions Code emphasize that duty in the responsibility of kindred for the support of indigents (secs. 2576–2579); of relatives for the support of the blind (sec. 3008); of relatives for cost of maintenance of those mentally disordered (sec. 5077) and of insane and feeble minded persons (secs. 5105.5, 5105.6, 6650–6664, 5150–5152, 5260); of narcotic addicts (sec. 5356); of sexual psychopaths (sec. 5515); psychopathic delinquents (sec. 7060); of inebriates (sec. 7106). Moreover, the obligation to one's parents is recognized by the law of this state as contained in Civil Code, section 206, adopted in 1872. Finally, as though to make the aged needy parent secure against his thoughtless or unnatural child, the lawmakers imposed criminal sanctions whereby the failure of every adult, pecuniarily able to do do, to support his parent, is made a misdemeanor. (Pen. Code, sec. 270c.) In view of the legal obligations thus imposed, we are unable to conceive that either a member of the legislature or a member of the general public could be misled by the title

of the act of 1937, which specified certain sections of the Old Age Security Act and of the Welfare and Institutions Code "relating to aid to the aged" to be added or amended, merely because the body of the act makes those persons who are liable for such support debtors of the state to the extent of the support rendered. A title "relating to aid to the aged" must be a pointer to any person interested in an aged indigent parent, who is receiving aid from the state.

The imposition of responsibility upon the kindred was not fatal to the act of 1937. The purpose of the section as it stood following the amendment of 1937 was to establish responsibility on the part of certain relatives for moneys paid by the county as relief to the aged. Prior to that time, the recipient himself was made responsible to the extent of his property not exempt from execution.

Section 2224 is found in Division III of the Welfare and Institutions Code as enacted in 1937. That division relates to "aged persons". It is a part of article 7 which relates to "Repayment of Aid." (Deering.) By the act amending the section in 1937, it was not altered so as to treat of a new subject. It still aimed at the repayment of moneys furnished the aged in need and attempted to establish methods for determining which of those legally liable should be required, by judgment after judicial inquiry, to contribute to the repayment of moneys paid for relief to the parent or spouse of the defendant in such judgment.

The amendatory act of 1937 did not treat of a new subject. Responsibility for the money furnished to "aid the aged" was still the subject of the section and at all times it continued to be the subject. By the substantive portions of the section as amended in 1937, the legislature directed the board of supervisors to seek repayment of moneys furnished to the needy aged from responsible kindred. Thereby no new subject was interpolated by the change in the procedure whereby a method was added to facilitate the determination of him who is responsible, because he is pecuniarily able to pay. Directions therein to the board of supervisors to proceed against the kindred in the order of their pecuniary ability were merely a change in the mode of enforcing the repayment of relief by those relatives who are responsible. The general scope of the section, to wit: "aid to the aged", having been embraced in the Statutes of 1935, the act of 1937

was not rendered invalid because of a subordinate and procedural provision for collecting from those legally liable for the repayment of sums advanced. (*People* v. *Jordan, supra*; *Estate of Wellings, supra*; *People* v. *Glenn-Colusa Irr. Dist., supra*; *In re Bear*, 216 Cal. 536 [15 Pac. (2d) 489].)

Having demonstrated that the act of 1937 in no sense is contrary to the constitutional inhibition of section 24 of article IV, it will not be necessary to indulge in extended discussion to establish the validity of the amendments of 1939 and 1940.

The amendment of 1939 related to "aid to the aged". The general scope or subject of the act did not vary from that of 1937. But all clauses of the section as amended in 1939 related to the responsibility for aid to the aged except those mechanical or procedural aids for the use of the board of supervisors in their attempts to determine the pecuniary ability of the recipient's kindred. That act went so far only as to authorize the institution of an action against an adult child when it has been ascertained by the supervisors: (1) That such child filed a personal income tax return, and (2) that he is pecuniarily able to contribute to the support of his parent. Again there is no change in the subject of responsibility "for aid to the aged". Obviously, in order to economize on the expense of making such investigations the board was authorized to proceed only where the kindred had earned sufficient to necessitate his filing a personal income tax return.

In 1940 again there was no change in the subject of the section. It is still responsibility for "aid to the aged". The subject indicated by the title was "aid to the aged". Again the legislature undertook further to abbreviate the labors and the expense on the part of the board of supervisors in proceeding to determine the identity of those who possess sufficient financial resources to justify instituting an action to compel them to repay the relief money so furnished. It went one step further by providing that in those cases where an income tax return has not been filed by the kindred the "board shall not further investigate the financial resources of such kindred". It appears, therefore, that by none of the amendments to the Old Age Security Act, or to the Welfare and Institutions Code, was the subject as suggested by each of the titles ever changed but in each instance purely mechanical

contrivances were added to the act in the interest of what the legislature conceived to be an attempt to do justice in such cases and at the same time to conserve and promote the public economy. Such concept and its enactment were properly within the legislative domain.

3. The complaint does state a cause of action. It alleges all the inducive matters which are necessary to the allegation of the primary fact, to wit: defendant's pecuniary ability to support or contribute to the support of his mother. By referring to the *résumé* of the amended complaint in the forepart of this opinion, it will be observed that nothing is absent that is necessary to state a cause of action. By the enactment of section 2224 of the Welfare and Institutions Code, the superior court was authorized to determine whether the defendant was able to support, or contribute to the support of his mother. (*County of Lake* v. *Forbes,* 42 Cal. App. (2d) 744 [109 Pac. (2d) 972].) It was not intended that the complaint should do more than state such facts as would warrant a judicial inquiry in order to determine one thing, to wit: defendant's ability to pay for, or to contribute to, the support of his mother. It does state such facts.

Judgment is reversed with directions to the trial court to proceed in accordance with the foregoing opinion.

Wood, J., concurred.

McCOMB, J., Dissenting.—I dissent.

In my opinion the statute in question violates the Fourteenth Amendment of the Constitution of the United States, and as a result the judgment of the superior court should be affirmed.